Carmello Marquez, a minor, by Dionisia Marquez, his guardian and Dionisia Marquez, in her own right v. Hahnemann Medical College And Hospital of Philadelphia and Douglas Holsclaw, M.D. and Bonita Falkner, M.D.

Attorney General, Edward Biester, Appellant.

Argued October 7, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, MACPHAIL and PALLADINO. Judges WILKINSON, JR., BLATT, CRAIG and WILLIAMS, JR. did not participate.

*Gwendolyn T. Mosley,* Deputy Attorney General, with her *Harvey Bartle, III,* Acting Attorney General, for appellant.

*Harry Lore,* with him *Robert F. Simone,* and *Martin Heller* for appellee.

OPINION BY JUDGE MENCER, January 20, 1981:

Carmello Marquez, a minor, by Dionisia Marquez, his guardian, and Dionisia Marquez, in her own right, filed a complaint with the Administrator for Arbitration Panels for Health Care (Administrator) under the provisions of the Health Care Services Malpractice Act (Act), Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §1301.101 *et seq.*[1] This complaint

---

[1] The constitutionality of this act was upheld in *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932 (1978). In *Mattos v. Thompson,* Pa. , 421 A.2d 190 (No. 124 E.D. Misc. Docket 1979, filed September 22, 1980), Section 309 of the Act, 40 P.S. §1301.309 (original exclusive jurisdiction given to the arbitration panel to hear and decide claims for injury or death as a result of tort or breach of contract by a health care provider) was declared unconstitutional.

In *Parker,* an overview of the Act and the objectives it sought to accomplish was stated as follows:

The Act was designed to make available professional insurance at a reasonable cost and to establish a system through which a victim who has sustained injury or death as a result of a tort or breach of contract by a health care provider can be assured of a prompt adjudication of the claim and a fair recovery for the losses sustained. A compulsory arbitration system was devised in an effort to reduce frivolous claims and to expedite the disposition of cases in this area. While the Act conditioned the right of trial by jury upon first proceeding to arbitration, it also attempted to assure a successful plaintiff that any judgment ultimately entered would be satisfied by the malpractice insurance which the various health care providers were required under the Act to maintain. Additionally, a fund administered by the state was established to pay judgments in excess of the insurance limits. Additionally, the Act addressed the competency of medical services by giving various state health care licensing and regulatory boards additional funds, authority and personnel to investigate and institute license suspension and revocation cases.

stated a claim for damages resulting from the furnishing of medical services which were provided by Hahnemann Medical College and Hospital of Philadelphia and Douglas Holsclaw, M.D., and Bonita Falkner, M.D.

Prior to the first meeting of the arbitration panel to which the Administrator referred this complaint, the parties agreed to settle the claim for the sum of $1 million. At this point, because a minor was involved, the parties should have sought approval of the settlement from the Administrator, as provided in

---

The position of Administrator for Arbitration Panels for Health Care was established within the Department of Justice. The staff of the administrator is funded from fees charged to each health care provider practicing in the Commonwealth. The administrator is empowered to promulgate such rules and regulations as are necessary to carry out the arbitration provisions of the Act. The Act provides for compulsory arbitration of malpractice cases in which health care providers are defendants. There may be a joinder of additional parties who may be necessary and proper for a just determination of a claim, whether or not the additional parties are health care providers. The administrator has been empowered to rule on all preliminary motions and to consider and approve offers of settlement for fiduciaries, minors and incompetents prior to appointment of an arbitration panel chairman.

Arbitration panels are to consist of two attorneys, two health care providers and three lay persons. The administrator has the right to select one of the two attorney members to serve as chairman, who then shall determine all questions of law including evidentiary matters and instructions to the panel after the presentation of the case. Each litigant is provided with a list of five candidates for each category of panel membership with biographical information. A designated number of preemptory challenges are allotted to each litigant and there is an unlimited number of challenges for cause.

483 Pa. at 114-16, 394 A.2d at 936-37 (footnotes omitted).

Section 307(b) of the Act, 40 P.S. §1301.307(b).[2] However, a different course was pursued which produced this appeal.

Martin Heller, Esquire, and Robert F. Simone, Esquire, attorneys for the plaintiffs, filed a petition with the Court of Common Pleas of Philadelphia County (Court) seeking to obtain an order of court approving the settlement and fixing counsel fees pursuant to the provisions of Pa. R.C.P. No. 2039.[3] This petition led to the entry of an order, on December 15, 1977, which approved the settlement and authorized a fee to attorneys Heller and Simone in the amount of $333,333.

Following this court order, the settlement was submitted to the Administrator for approval, as provided in Section 307(b) of the Act. The Administrator initially declined to approve the settlement until attorneys' fees were in conformance with Section 604(a)

---

[2] Section 307(b) provides:

(b) The administrator shall have the power to consider and approve offers of settlement for fiduciaries, minors and incompetent parties at any time prior to the first meeting of the arbitration panel. The fund may be represented at any negotiation or settlement exceeding the basic coverage insurance carrier limit of liability.

[3] Pa. R.C.P. No. 2039 provides, in pertinent part, as follows:

(a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

(b) When a compromise or settlement has been so approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court, upon petition by the guardian or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses.

of the Act, 40 P.S. §1301.604(a), which limits attorneys' fees in medical malpractice cases as follows:

(a) When a plaintiff is represented by an attorney in the prosecution of his claim the plaintiff's attorney fees from any award made from the first $100,000 may not exceed 30%, from the second $100,000 attorney fees may not exceed 25%, and attorney fees may not exceed 20% on the balance of any award.

Thus, this section would limit attorney fees on a settlement of $1 million to $215,000.

The Administrator eventually approved the settlement after counsel agreed to place in escrow the sum of $110,610.77, that being the difference between the $333,333 attorneys' fee authorized by the Court and the $215,000 attorneys' fee authorized by Section 604(a) of the Act, less costs of $7,722.23. The Administrator then filed a petition with the Court seeking modification of the Court's order which authorized attorneys' fee of $333,333. On October 2, 1979, the Court entered an order denying the petition to modify and directed that the $110,610.77 being held in escrow be remitted to counsel for plaintiffs. This appeal followed.

The basis for the Court's order was that Sections 307(b) and 604(a) of the Act are inconsistent with Pa. R.C.P. No. 2039 and therefore are suspended pursuant to the Act of June 21, 1937, P.L. 1982, *as amended* (Act of 1937), 17 P.S. §61 *et seq.* We conclude that there are two reasons why the Court was in error.

A reasonable construction of the Act of 1937, which authorizes our Supreme Court to prescribe rules of *practice and procedure,* precludes our holding that Pa. R.C.P. No. 2039 provisions can deny to plaintiffs substantive rights created by the General Assembly. The Supreme Court was authorized by the Act of 1937 to suspend the operation of any act of assembly re-

lating to practice or procedure which is inconsistent with such rule, but we fail to comprehend how it could be contended that the Health Care Services Malpractice Act is an "act relating to practice or procedure." The substantive right to terminate one's cause of action by an approved settlement prior to arbitration and before access to the courts could not be abrogated by a rule of court. As stated in *Pittsburgh Parking Garages, Inc. v. Urban Redevelopment Authority,* 370 Pa. 578, 580, 88 A.2d 780, 781 (1952), "[t]he procedural rules were not intended to change the substantive rights of the parties: Act of June 21, 1937, P.L. 1982, 17 P.S. §61, as amended."

Accordingly, we recognize that a rule of civil procedure cannot suspend a substantive right legislatively conferred. *Templeton Appeal,* 399 Pa. 10, 159 A.2d 725 (1960); *Commonwealth v. Smith,* 73 Pa. D. & C.2d 421 (1975). *See Nosal v. Nosal,* 410 Pa. 304, 189 A.2d 262 (1963) (act of 1937 limited to the practice and procedure in the courts and not intended to enlarge jurisdiction of the courts).

However, a more fundamental reason exists for concluding that the Court was in error when it acted upon the petition of plaintiffs' counsel to invoke the provisions of Pa. R.C.P. No. 2039. At the time the Court's involvement in the instant case was sought, the matter was not within the court system and the Court had no jurisdiction over the case and therefore could not act in regard to it or make orders in accord with the provisions of the Pennsylvania Rules of Civil Procedure. The correctness of this reasoning was established by our Supreme Court in *Parker v. Children's Hospital of Philadelphia, supra* note 1, when, discussing the Act, it stated: "This Act provides that all claims for malpractice against doctors of medicine, osteopathy, and podiatry, as well as hospitals, nursing homes, health maintenance organizations and their

officers, employees or agents must, in the first instance, be submitted to arbitration *before access to the courts is permitted."* 483 Pa. at 113, 394 A.2d at 936 (emphasis added).

Section 307(b) provides the Administrator the authority to consider and approve the settlement of minors' actions. This section is part of a comprehensive statutory scheme with a stated purpose to make available professional liability insurance at a reasonable cost and to establish a system through which a person who has sustained injury as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.

Under this statutory scheme, a compulsory arbitration system was created which requires claimants to first submit their claims to arbitration before they may proceed to court. The requirement that claimants arbitrate is the condition precedent to obtaining access to the courts. At the time that the Administrator approves settlement of minor actions in accord with Section 307(b) of the Act, the action is within the arbitration process, and the Administrator is the only one competent to consider and approve the settlement. The courts have jurisdiction over minors' settlements *only after* an appeal has been effected under the provisions of Section 509 of the Act, 40 P.S. §1301.509, and the case has entered the court system and has for the first time come within the jurisdiction of the court.[4]

---

[4] Section 307(a) of the Act, 40 P.S. §1301.307(a), empowered the Administrator to adopt and publish such uniform rules and regulations as might be necessary to carry out the provisions of the Act. Accordingly, the provisions of Chapter 171 of Title 37 of the Pennsylvania Code, 37 Pa. Code §171.1 *et seq.*, were issued relative to the rules of practice and procedure before Arbitration Panels for

Accordingly, the Court, in the instant case, lacked jurisdiction to entertain the petition seeking its approval of the settlement in question here and requesting it to fix attorneys' fees. Therefore, its orders pertaining to these matters must be vacated.

Orders vacated.[5].

ORDER

AND Now, this 20th day of January, 1981, the orders of the Court of Common Pleas of Philadelphia County, dated December 15, 1977 and October 2, 1979, approving a settlement in the above captioned case and authorizing attorneys' fees and payment to attorneys of money held in escrow, are hereby vacated.

Health Care. Although 37 Pa. Code §171.11(a) provides that the rules of civil procedure shall govern all proceedings, *except as provided in the Act*, 37 Pa. Code §171.130, in effect at the time the instant suit was initiated, provided that approval of a settlement involving minors by the Administrator shall not relieve the parties from the need of obtaining approval by an appropriate court where such is required by the Pennsylvania Rules of Civil Procedure. Our legal analysis, as set forth in the body of our opinion, explains why in this case there is no need or requirement to obtain court approval of a minor's settlement in accordance with Pa. R.C.P. No. 2039.

[5] Since we only have before us an appeal from the Court's orders, our holding that the Court lacked jurisdiction to enter such orders makes it inappropriate for us to pass upon the constitutionality of Section 604(a) of the Act.

CONCURRING OPINION BY JUDGE MACPHAIL:

While I join in the result reached by the majority that the Court of Common Pleas of Philadelphia County erred, I regret that this Court has not addressed the constitutionality of Section 604(a) of the Act, 40 P.S. §1301.604(a) inasmuch as I feel that that issue was properly before us and was extensively briefed and argued by counsel.

Our order reversing the Court of Common Pleas means that the parties will now be bound by the ad-

ministrator's implementation of Section 604(a). Inasmuch as counsel for the minor claimants argued vigorously that the statutory limitations on counsel fees was unconstitutional, there can be no doubt that the case will be back before us again with the same arguments and briefs seeking a resolution of that issue. I do not believe that such a procedure constitutes judicial economy nor do I think that the litigants should be put to the additional effort and expense involved in a second appeal.