Martin Heller, Esquire and Robert F. Simone, Esquire, Petitioners v. Arthur S. Frankston, Administrator of the Arbitration Panels for Health Care and Arbitration Panels for Health Care, Respondents.

Argued September 16, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Harry Lore,* for petitioners.

*Gwendolyn T. Mosley,* Deputy Attorney General, with her, *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE WILLIAMS, JR., August 11, 1983:

This case comes before the Court on appeal by the attorney-petitioners from an order of the Administrator for Arbitration Panels for Health Care (Administrator) directing the said attorneys to relinquish certain disputed funds relating to the settlement of a medical malpractice action. This Court must now determine the constitutionality of Section 604(a) of the Health Care Services Malpractice Act (Act),[1] which regulates the fees received by plaintiffs' attorneys in such actions.

[1] Act of October 15, 1975, P.L. 390, §604, *as amended,* 40 P.S. §1301.604. The Act provides as follows:

Attorney's fees

(a) When a plaintiff is represented by an attorney in the prosecution of his claim the plaintiff's attorney fees from any award made from the first $100,000 may not exceed 30%, from the second $100,000 attorney fees may not exceed 25%, and attorney fees may not exceed 20% on the balances of any award.

## Background

In 1977, petitioners commenced a medical malpractice action[2] before the Administrator on behalf of a minor through his guardian. Before a panel was selected, the litigants settled. Pursuant to a properly promulgated regulation[3] then in effect, petitioners applied to the Court of Common Pleas for leave to compromise the action for the amount of one million dollars ($1,000,000), and for approval of attorneys' fees of one-third of that settlement figure. Pa. R.C.P. 2039 (a)[4] mandates court approval of agreements entered into by the guardian for counsel fees. By approving the settlement and the agreements between petitioners and the guardian for counsel fees, the court of common pleas permitted recovery of counsel fees in excess of that authorized by Section 604(a) of the Act.

In addition to the approval of the court of common pleas, the petitioners were required by Section 307

(b) A plaintiff has the right to elect to pay for the attorney's services on a mutually satisfactory per diem basis. The election, however, must be exercised in written form at the time of employment.

[2] This action was commenced prior to *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980), which declared unconstitutional Section 309 of the *Act*, 40 P.S. §1301.309, the section granting "original exclusive jurisdiction" to arbitration panels established under the Act.

[3] The Regulation provided as follows:

*Requirement of Court Approval of Settlements*

Approval of a settlement involving fiduciaries, minors or incompetent parties by the Administrator or the arbitration panel shall not relieve the parties of obtaining approval by an appropriate court where such is required by the Pennsylvania Rules of Civil Procedure, 37 Pa. Code, §171.30, adopted July 1, 1976.

[4] Pursuant to Pa. R.C.P. 2039(a):

No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

(b)[5] of the Act, 40 P.S. §1301.307(b), to seek the approbation of the Administrator, who initially declined to approve the settlement as proposed because the attorneys' fees were in excess of those permitted under Section 604(a). The Administrator subsequently approved that portion of the fee allowed by the Act, contingent upon counsel's placing in escrow, pending final resolution of the matter, the disputed portion of the fee, a sum of one hundred ten thousand six hundred ten dollars and seventy-seven cents ($110,-610.77).

The Attorney General then filed a petition on behalf of the Administrator, by which he sought to modify the common pleas court order granting distribution of the settlement funds, and requesting that the sum in the escrow account plus the interest thereon be paid to the guardian of the estate of the injured minor. The common pleas court denied that petition, concluding that Sections 604(a) and 307(b) of the Act were inconsistent with Pa. R.C.P. 2039, which governed the procedures to be followed. The court therefore suspended the said sections of the Act.[6]

That order was appealed to this Court, which vacated same, opining that the common pleas court lacked jurisdiction to entertain the petition filed under Pa. R.C.P. 2039 to obtain approval of the medical malpractice settlement.[7] *Marquez v. Hahnemann*

---

[5] Section 307 of the Act, 40 P.S. §1301.307(b) reads in pertinent part:

> The administrator shall have the power to consider and approve offers of settlement for fiduciaries, minors and incompetent parties at any time prior to the first meeting of the arbitration panel.

[6] *See*, 42 Pa. C. S. §1722(a)(1), formerly the Act of June 21, 1937, P.L. 1982, *as amended*, 17 P.S. §61.

[7] *But See, Gallagher v. Caliguiri*, 287 Pa. Superior Ct. 250, 429 A.2d 1195 (1981), decided four months after this Court's decision

*Medical College and Hospital of Philadelphia,* 56 Pa. Commonwealth Ct. 188, 424 A.2d 975 (1981). Shortly thereafter, the Administrator ordered, *inter alia,* that the petitioners transmit the escrowed monies to the guardian of the minor's estate. It is from that order that petitioners have presently appealed. As predicted by Judge MacPhail in his incisive concurring opinion in *Marquez, supra,* the issue of the constitutionality of Section 604(a) is now before us.

## Discussion

Petitioners assert that Section 604(a) of the Act contravenes the due process and equal protection clauses of both the United States and Pennsylvania Constitutions by identifying the parameters of contingent fees payable to plaintiff's attorneys in malpractice actions. They further maintain that the said section violates the constitutional principle of separation of powers by usurping that duty of the Commonwealth judiciary to supervise and regulate both the practice of law and those attorneys' fees, contingent or otherwise, which may reasonably be charged as an adjunct of such practice.

The Office of the Attorney General of Pennsylvania asserts on behalf of the Administrator that since Article III, Section 1, of the Pennsylvania Constitution vests the General Assembly with authority to promulgate the substantive law of this Commonwealth and to enunciate public policy, Section 604(a) of the Act, which limits attorneys' fees, is a valid exercise of extant authority and does not constitute interference with the power of the judiciary. The Administrator additionally contends that the fee limitation of Sec-

in *Marquez,* in which the Superior Court determined that "original jurisdiction in such actions (medical malpractice) has been retained in the Courts of Common Pleas."

tion 604(a) is a reasonable response to the problem of rising medical malpractice costs, and thus it furthers the Commonwealth policy of protecting victims of medical malpractice.

We initially note that the existence of contingent fee arrangements is acknowledged by those portions of the Code of Professional Responsibility which govern their provisions. *See, e.g.,* Canon 2, Ethical Consideration 2-20, Disciplinary Rule 2-106(B)(8) and Ethical Consideration 2-17, which collectively impose upon such fee arrangements a requirement of reasonableness, the determination of which depends upon a consideration of ''all relevant circumstances.'' Ethical Consideration 2-18.

The Commonwealth does not here allege that the fee charged by the petitioners in this case, absent the statutory language of Section 604(a), was either unfair, unusual, or unreasonable in this case or cases of this kind, involving a minor plaintiff with serious injuries caused by medical malpractice, nor would we so conclude.[8]

Of primary importance in this case, however, is the question of the interplay of the legislative and judicial

---

[8] We note that the Florida Supreme Court in *In the Matter of the Florida Bar, Re Amendment to Code of Professional Responsibility* (Contingent Fees), 349 So 630, (1977) rejected a proposed amendment to court rules which would have imposed a maximum contingent fee on plaintiff's attorneys, finding an infringement upon the constitutional guarantee of freedom of contract. It has been suggested that to,

arbitrarily deny a claimant the right of competent legal representation by fixing unreasonably low remuneration for services rendered by attorneys is a serious matter and may amount to a denial of due process.

*Cline v. Warrenberg,* 126 P.2d 1030, 1031 (Colo. 1942). See Anno. *Constitutionality of Statute Limiting Amount of Attorney's fees or Charges,* 69 L. Ed. 775 (1925) (". . . doubtless any statute attempting to do this would be held unconstitutional. . . .")

branches in regulating various aspects of attorney conduct. It is well settled that the General Assembly has the power to promulgate substantive law, and through the exercise of its police power may legislate except where such legislation is prohibited. But, as the Administrator recognizes, "(e)ven a statute enacted pursuant to the legislature's police power which furthers a laudable public policy must be struck down if it is found to interfere with another co-equal branch of government."[9] It is precisely because we find that Section 604(a) of the Act constitutes an impermissible legislative interference with the responsibilities of the judiciary, a co-equal branch of government, that we must reverse the order of the Administrator.

In its original form, the Act provided for initial compulsory arbitration of medical malpractice claims with the right of appeal *de novo* to the court. It did not abolish common law malpractice actions for money damages. As the Superior Court noted in *Gallagher, supra,* in reiterating the unconstitutionality of the language divesting the common pleas court of original jurisdiction of such cases, "(i)t follows from the Supreme Court's holding in *Mattos* that original jurisdiction in such actions has been retained in the courts of common pleas. . . ." 287 Pa. Superior Ct. at 252, 429 A.2d at 1195. The petition filed under Pa. R.C.P. 2039 for approval of the settlement in this matter was thus properly before the court of common pleas. That court reached the correct result in declining to accord to the Administrator, and Section 604(a) of the Act, legislative ascendance over the procedural rules by which the judiciary governs the professional conduct of attorneys handling malpractice actions.

This issue has been examined previously in the Commonwealth. *Petition of Splane,* 123 Pa. 527, 16 A.

[9] Brief of Respondent, p. 8.

481 (1889), resolved the issue of whether a writ of mandamus should issue to the judges of the orphans' court directing that they admit Mr. Splane to practice before that tribunal under an act[10] of assembly regulating the admission of attorneys to practice. The Pennsylvania Supreme Court described that act as an unconstitutional violation of the separation of powers inherent in the Constitution. To the extent that the act governed the admission, professional conduct, and discipline of attorneys, it was viewed as "an encroachment upon the judiciary department of the government." *Id.* at 540, 16 A. at 483. Such an encroachment would be viewed by the Court "as a vain attempt by the Legislature to exercise a power which it does not possess." *Hoopes v. Bradshaw,* 231 Pa. 485, 487, 80 A. 1098, 1099 (1911). "The adoption of rules of court regulating practice therein is certainly as much a judicial function, with which the Legislature may not interfere as is the admission of attorneys. . . ." *Id.* at 490, 80 A. at 1100. *See also, Beckert v. American Federation of State, County and Municipal Employees,* 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981) (Separation of powers in the context of the inherent authority of the court to dismiss judicial employees reaffirmed); *Ballou v. State Ethics Commission,* 56 Pa. Commonwealth Ct. 240, 424 A.2d 983 (1981) (Section 4 of the Ethics Act is an unconstitutional encroachment by the legislature on the Pennsylvania Supreme Court's inherent and exclusive power to regulate the conduct of attorneys). *Snelbaker v. State Ethics Commission,* 56 Pa. Commonwealth Ct. 270, 424 A.2d 623 (1981); *Yost v. State Ethics Commission,* 56 Pa. Commonwealth Ct. 250, 424 A.2d 611 (1981).

---

[10] That act, since repealed, was the Act of May 7, 1885, *as amended.* P.L. 16, entitled, "An act to further regulate the admission of attorneys and counsellors at law to practice in the several courts of this commonwealth (sic)."

The principle of separation of powers is the cornerstone of our democratic form of government. From the historical perspective presented by Hamilton, Jay, and Madison to the present time, it has been, and remains, a vital doctrine determining the structure of both our state and federal systems, and is the statement of the parameters within which each of the branches of government operates. It is this principle which compelled the Supreme Court of Pennsylvania to determine that the Public Agency Open Meeting Law, Section 10 of the Judiciary Act Repealer Act, 42 Pa. C. S. §1703, was unconstitutional as applied to that Court. *See, In re 42 PA. C. S. §1703*, 482 Pa. 522, 529, 394 A.2d 444, 448 (1978), wherein the Court quoted *Garrett v. Bamford*, 582 F.2d 810, 814 (3rd Cir. 1978), as enunciating that " 'the Pennsylvania Constitution gives the state's supreme court exclusive power to establish rules of procedure for state courts' and that 'the legislature . . . is *without power to control procedure.*' " (Emphasis in original.) The Court went on to firmly reiterate that regulating the bar and disciplining lawyers are judicial functions "protected against legislative incursion, as are, for instance, adjudications issued in traditional adversary litigation." *Id.* at 530, 394 A.2d at 449.

The provision of the Pennsylvania Constitution which records the power of the Supreme Court to prescribe general rules for admission to and regulation of the bar, Article V, Section 10(c),[11] has been held to

---

[11] Article V, Section 10(c) of the Pennsylvania Constitution reads as follows:

    (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of ac-

include "the continuous monitoring of the practice of law." *Cantor v. Supreme Court of Pennsylvania*, 353 F. Supp. 1307, 1316, n. 21 (E.D. Pa. 1973).

Included in that "regulated" conduct of attorneys which falls well within the ambit of the constitutionally discrete power of the judiciary is the fee charged by lawyers. As early as 1793, the courts of this Commonwealth were addressing such issues. *See, Breckenridge v. McFarland*, Addison Reporter 49 (1793). More recently, in *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3rd Cir. 1973), *cert. denied*, 414 U.S. 1111 (1973), the Federal Appeals Court noted that "in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, *including the charges of contingent fees.*" (Emphasis added.) We conclude that Section 604(a) infringes upon the exclusive power of the courts of this Commonwealth to govern the activities of attorneys relative to their contingent fee agreements, and is thus unconstitutional.[12]

tions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

[12] Because of our disposition of the separation of powers issue, we need not address the due process question raised by petitioners. We note, however, that a controversy similar to that presently before us was recently resolved in New Hampshire, when the Supreme Court of that state voided a limitation on plaintiffs' attorney fees contained in the New Hampshire medical malpractice act. That court declared that such a provision

We turn finally to the Administrator's argument regarding the similarity of provisions in other statutes—relating to the payment of compensation for unemployment, job-related injuries, and loss or injury due to crime—which contain legislatively mandated limitations on the fee to be charged by the claimant's attorney. We find such assertions unpersuasive, for in each of these enactments the general assembly *created* the remedy, which had not previously existed as a common law cause of action, as did medical malpractice.

Medical malpractice litigation has evoked strong emotions on both sides of the controversy in recent years. The debate in this Commonwealth has been replicated in other states as well. Plaintiffs' attorneys in these cases have been swept into the maelstrom, as it is their fees which have been affected. The Courts of this Commonwealth have the power and authority to examine and approve those fees, as discussed herein, and such regulation cannot be usurped.

## ORDER

AND Now, this 11th day of August, 1983, the order of the Administrator in the above-captioned matter is hereby vacated.

---

*unfairly burdens malpractice plaintiffs and, to a lesser extent, their attorneys, (since) the regulation of attorney's fees solely in the area of medical malpractice inevitably will make such cases less attractive to the plaintiff bar. . . .* This statute also unjustly discriminates by interfering with the freedom of contract between a single class of plaintiffs and their attorneys. It does not regulate contingency fees generally nor does it apply to defense counsel in medical malpractice cases, whose fees consume approximately the same percentage of the insurance premium dollar as do those of the plaintiff bar. (Emphasis added.)
*Carson v. Mauer,* 120 N.H. 925, 424 A.2d 825, 839 (N.H. 1980). *See also,* 12 ALR 4th 23.