701 A.2d 568

COMMONWEALTH of Pennsylvania, Appellant,

v.

David J. STERN, Thomas H. Purl, III, and
Richard Bagenstos, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 9, 1996.

Decided Oct. 30, 1997.

506

Jerome T. Foerster, Harrisburg, for the Commonwealth.

Joel Harvey Slomsky, Philadelphia, for D.J. Stern.

Samuel C. Stretton, for T.H. Purl, III.

Stephen B. Jarrett, Philadelphia, for R. Bagenstos.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal by the Commonwealth of Pennsylvania from the order of the Philadelphia County Court of Common Pleas, which upheld a determination by the Philadelphia County Municipal Court that Section 4117(b)(1) of the Crimes Code, 18 Pa.C.S. § 4117(b)(1), is unconstitutional.[1] We affirm.

David J. Stern, Thomas H. Purl, III and Richard Bagenstos (Appellees) were charged with violations of § 4117(b)(1), which prohibits a lawyer from compensating or giving anything of value to a non-lawyer for recommending or securing employment by a client. Stern and Purl are attorneys licensed to practice law in Pennsylvania; Bagenstos is authorized to practice law in Washington, D.C., but not in Pennsylvania.

The criminal complaints filed against Purl and Bagenstos alleged that they violated § 4117 by unlawfully compensating a non-lawyer for having made a referral with respect to an insurance claim. The affidavit of probable cause for the arrest warrant, prepared by Special Agent John Ainsley of the Office of the Attorney General, indicates that the Federal Insurance Fraud Task Force in Philadelphia had referred to the Attorney General an investigation into the use of runners, i.e., non-lawyers who are paid a fee to obtain clients for or make referrals to lawyers and health care providers. According to the affidavit, Special Agent John Jefferson of the Criminal Investigation and Prosecution Section of the Attorney General's office interviewed an unidentified confidential source who had identified himself as a non-lawyer and who had served as a runner for lawyers and health care providers in southeastern Pennsylvania over a period of six years beginning in 1987.

1. Pursuant to 42 Pa.C.S. § 722(7), this Court has exclusive jurisdiction of an appeal from a final order of the court of common pleas when the court holds a statute invalid as repugnant to the Pennsylvania Constitution.

The source identified Purl and Bagenstos as individuals who had paid him money for client referrals in the past.

Using the name of John H. Jones, Jr., Special Agent Jefferson posed as an operator of an automobile which had been involved in a collision with a utility company truck in Philadelphia on May 4, 1993. Pretextual documents were provided by the Liberty Mutual Insurance Company of Boston, Massachusetts, a utility company and the Philadelphia Police Department to aid Special Agent Jefferson in his ruse. The confidential source introduced the agent to Purl. Purl interviewed the agent and introduced him to Bagenstos, advising the agent that Bagenstos would be handling the accident case. Subsequent to the initial meeting, the agent signed documents to retain the lawyers to represent him in legal matters relating to the fabricated accident.

The affidavit alleges that on May 14, 1993, the agent searched the confidential source and removed all belongings and money from him. The source went to Purl's law office. Upon his return, the source told the agent that he spoke to Purl and Bagenstos about the accident case of John H. Jones, Jr., and that he received a partial payment of $100 for his referral of that case. The balance of the money owed for the referral was to be paid to the source the following week.

A search warrant was issued on November 18, 1993, by the common pleas court, authorizing the search of the law office of Purl and his associate, Bagenstos. Special Agent Jefferson conducted the search of the premises and seized papers, documents and insurance information relating to the accident case of John Jones. Criminal charges were brought against Purl and Bagenstos alleging violations of § 4117(b)(1) and 18 Pa.C.S. § 903 (criminal conspiracy).

The same confidential source informed Special Agent Jefferson that he had received money from David Stern, Esquire for client referrals over a three-year period. The agent was introduced to Stern and identified as John Jones, a potential client who had been injured in an automobile accident on April 26, 1993. On May 7, 1993, the source went to Stern's office

after being searched and discussed the Jones accident case with Stern. Stern gave the source a check in the amount of $500 for the case referral. The check was turned over to the agent. On November 18, 1993, a search warrant was issued for Stern's law office and executed by other special agents of the Attorney General's office. The agents confiscated documents relating to the legal representation of Jones. Stern was charged with violating § 4117.

Stern, Purl, and Bagenstos filed motions to dismiss the charges with the Municipal Court of Philadelphia, challenging the constitutionality of § 4117(b)(1) under the state and federal constitutions. They asserted that the statutory provision was unconstitutional because (1) it violates Article V, Section 10(c) of the Pennsylvania Constitution which grants sole authority to regulate the conduct of attorneys to the Supreme Court of Pennsylvania, (2) it violates the First and Fourteenth Amendments of the United States Constitution, and (3) it lacks the necessary mens rea requirement. The municipal court judge rejected the latter two assertions, but agreed with Appellees' assertion that § 4117(b)(1) was unconstitutional because it violated the separation of powers doctrine. The charges against the Appellees were dismissed. The Philadelphia County Common Pleas Court denied the Commonwealth's appeal. This direct appeal followed.

The Commonwealth argues that the separation of powers doctrine is not offended by the enactment of a statute that criminalizes conduct of an attorney for compensating a nonlawyer for client referrals because the legislature has the power to classify crimes. Appellees respond that § 4117(b)(1) violates the separation of powers doctrine since the statute infringes on the sole authority of the Supreme Court to *regulate the conduct of members of the legal profession.*

"A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government." *Beckert v. Warren,* 497 Pa. 137, 144, 439 A.2d 638, 642 (1981) (citations omitted). "Under the principle of separation of the powers of govern-

ment, ... no branch should exercise the functions exclusively committed to another branch." *Sweeney v. Tucker,* 473 Pa. 493, 508, 375 A.2d 698, 706 (1977) (citations omitted). As the ultimate interpreter of the Pennsylvania Constitution, this Court bears the responsibility of determining whether a matter has been exclusively committed to one branch of the government. *Id.,* 473 Pa. at 510, 375 A.2d at 706.

The inherent and exclusive authority of the Supreme Court over members of the legal profession was recognized in *Petition of Splane,* 123 Pa. 527, 16 A. 481 (1889), which held that the admission of an attorney to practice before a court is a judicial act. "If there is anything in the constitution that is clear beyond controversy, it is that the legislature does not possess judicial powers." 123 Pa. at 539, 16 A. at 483. Judicial powers are to be exercised by the judiciary alone and any encroachment upon the judiciary "must be regarded as a vain attempt by the legislature to exercise a power which it does not possess." *Hoopes v. Bradshaw,* 231 Pa. 485, 487, 80 A. 1098, 1099 (1911).

When the Pennsylvania Constitution was revised in 1968, the Supreme Court's authority to regulate the courts and the conduct of attorneys was embodied in Article V, Section 10:

(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate.

. . . .

(c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to

practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

Pursuant to our constitutional authority, this Court adopted the Rules of Professional Conduct and the Rules of Disciplinary Enforcement, which govern the conduct and discipline of attorneys. Rule 7.2(c) of the Rules of Professional Conduct states that

a lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by this rule and may pay the usual charges of a not-for-profit lawyer referral service or other legal service organization.

Section 4117(b)(1) of the Crimes Code tracks the language of this Rule:

[a] lawyer may not compensate or give anything of value to a nonlawyer to recommend or secure employment by a client or as a reward for having made a recommendation resulting in employment by a client; except that the lawyer may pay:

(i) the reasonable cost of advertising or written communication as permitted by the rules of professional conduct; or

(ii) the usual charges of a non-for-profit lawyer referral service or other legal service organization. Upon a conviction of an offense provided for by this paragraph, the prosecutor shall certify such conviction to the disciplinary board of the Supreme Court for appropriate action. Such action may include a suspension or disbarment.

18 Pa.C.S. § 4117(b)(1). An offense under this subsection is graded as a misdemeanor of the first degree. 18 Pa.C.S. § 4117(d).

■ Appellees challenged the constitutionality of § 4117(b)(1) on the basis that the conduct criminalized thereunder is purely regulatory conduct which the Supreme Court has already addressed and prohibited under the Rules of Professional Conduct. "There is a presumption that lawfully enacted legislation is constitutional. Should the constitutionality of legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Commonwealth v. Kohl,* 532 Pa. 152, 166, 615 A.2d 308, 315 (1992) (citation omitted).

■ The presumption in favor of the constitutionality of a statute reflects on the judiciary's respect for the legislature as a co-equal branch of government. *Commonwealth v. Sutley,* 474 Pa. 256, 260, 378 A.2d 780, 782 (1977). The legislature is precluded, however, from exercising powers entrusted to the judiciary. *Maunus v. Commonwealth of Pennsylvania, State Ethics Commission,* 518 Pa. 592, 544 A.2d 1324 (1988). Thus, the presumption of constitutionality must give way when there is any encroachment upon the judicial power by the legislature. Indeed, "it is the duty of the courts to invalidate legislative action repugnant to the constitution." *Zemprelli v. Daniels,* 496 Pa. 247, 256, 436 A.2d 1165, 1169 (1981) (citations omitted).

■ Article V, Section 10(c) vests the exclusive power to govern the conduct of attorneys in the Supreme Court of Pennsylvania. In *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980), John M. Wajert, a former common pleas judge, filed a declaratory judgment action seeking a declaration that § 3(e) of the State Ethics Act, 65 P.S. § 403(e), was inapplicable to members of the judiciary. Section (3)(e) prohibited former officials or public employees from representing a person on any matter before the governmental body with which he had been associated for one year after

leaving his position. Upon leaving the bench, Wajert had requested an opinion from the State Ethics Commission as to whether this section applied to a common pleas court judge. The Commission informed Wajert that § 3(e) would bar a former common pleas court judge from representing a client before the court with which he was associated for one year following retirement or resignation.

We determined that the application of the statute to former judges "constitute[d] an infringement on the Supreme Court's inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth." 491 Pa. at 262, 420 A.2d at 442. We held that the statute was unconstitutional insofar as it was applicable to former judges. Of particular significance was the fact that this Court had specifically exercised its power to deal with the mischief that the Ethics Act attempted to address when the Code of Professional Responsibility was adopted.

> Long before the Ethics Act was enacted, this Court adopted the Code of Professional Responsibility enunciating the standards governing the professional conduct of those engaged in the practice of law in this Commonwealth. In the rules enforcing that Code, this Court had made it abundantly clear that supervising the conduct of an attorney, including that of a former judge, before the courts of this Commonwealth was a matter exclusively for this Court.

491 Pa. at 262, 420 A.2d at 442. See also *Kury v. State Ethics Commission,* 62 Pa.Cmwlth. 174, 435 A.2d 940 (1981) (§ 3(e) of the State Ethics Act as applied to attorneys was an impermissible intrusion by the legislature into an area reserved by the Constitution to the Supreme Court).

As in *Wajert,* this Court has specifically dealt with the conduct of attorneys that the legislature attempts to regulate under 18 Pa.C.S. § 4117(b)(1). Rule 7.2(c) of the Rules of Professional Conduct prohibits an attorney from giving anything of value to a person for recommending the attorney's services, except for payments of advertising or charges imposed by referral services or legal service organizations. Section 4117(b)(1) is essentially a word-for-word restatement of

Rule 7.2(c). It is no coincidence that § 4117(b)(1)(ii) directs that the prosecutor in the criminal case certify a conviction for a violation thereof to the Disciplinary Board of the Supreme Court.

The legislature's "exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes", *Commonwealth v. Church*, 513 Pa. 534, 543, 522 A.2d 30, 35 (1987), is not in question. As the Commonwealth Court stated, however, in its decision in *Heller v. Frankston*, 76 Pa.Cmwlth. 294, 464 A.2d 581 (1983), aff'd. 504 Pa. 528, 475 A.2d 1291 (1984),

> Of primary importance in this case ... is the question of the interplay of the legislative and judicial branches in regulating various aspects of attorney conduct. It is well settled that the General Assembly has the power to promulgate substantive law, and through the exercise of its police power may legislate except where such legislation is prohibited. *But, ... "(e)ven a statute enacted pursuant to the legislature's police power which furthers a laudable public policy must be struck down if it is found to interfere with another co-equal branch of government."*

76 Pa.Cmwlth. at 299–300, 464 A.2d at 584 (footnote deleted) (emphasis added).

The effect of § 4117(b)(1) is to criminalize the conduct of attorneys that is the subject of regulation by the Supreme Court. Clearly, the statute does not establish a duty imposed uniformly upon citizens to forego payments to individuals for business or client referrals. What may be a common business practice in some fields or trades becomes a criminal act if performed by an attorney. It is simply by virtue of the attorney's status that criminal consequences attach to such conduct.

In *Maunus v. Commonwealth of Pennsylvania, State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988), we stated that

> this Court is the only governmental body entitled to regulate and discipline the professional class of attorneys. *No*

*other component of our state government may impose duties applicable to every attorney admitted to practice in the Commonwealth, nor may another Commonwealth entity admit to practice or discipline an attorney.*

518 Pa. at 597, 544 A.2d at 1326 (emphasis added). We have seen fit to prohibit the practice of attorneys paying for referrals in the exercise of our exclusive authority to supervise the conduct of attorneys. This involves a matter entrusted solely to the Supreme Court under Article V, Section 10(c) of the Pennsylvania Constitution. We hold, therefore, that § 4117(b)(1) is unconstitutional because it infringes upon this authority.[2]

The order of the Philadelphia County Court of Common Pleas is affirmed.

---

**2.** Since our holding is dispositive of the matter, we need not address the remaining issues raised by the Commonwealth.