# Commonwealth v. Riggs

C.P. of Lebanon County, no. 2000-11119.

*Mark T. Schappell,* for Commonwealth.
*Christopher J. Coyle,* for defendant.

BEFORE: EBY, *P.J.,* TYLWALK, KLINE AND CHARLES, *JJ.*

CHARLES, *J.,* April 19, 2001—Before us is a constitutional challenge to Pennsylvania's Ignition Interlock

Law. The above-referenced defendant has filed a motion seeking to modify his sentence to eliminate the requirement that he comply with Act 63 of 2000. The defendant's motion claims that the Ignition Interlock Law violates the equal protection clause of the United States and the Pennsylvania Constitutions. The defendant also claims that the law is unconstitutional because it imposes upon the judiciary functions which traditionally belong to the executive branch of government. For reasons that will follow, we agree with the defendant.

## I. IGNITION INTERLOCK LAW

Pennsylvania's Ignition Interlock Law is found at sections 7002 and 7003 of the Judiciary Code and reads, in pertinent part:

"Section 7002. *Ignition Interlock Systems For Driving Under the Influence* . . .

"(b) second or subsequent offense—In addition to any other requirements imposed by the court, where a person has been convicted of a second or subsequent violation of 75 Pa.C.S. §3731, the court shall order the installation of an approved ignition interlock device on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

"Section 7003. *Additional Driver's License Restoration Requirements*

"In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. §1548 (relating to requirements for driving under the influence offenders):

"(1) Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. §3731 (relating to driving under the influence of alcohol or controlled substance), or a similar out-of-state offense, and the person seeks a restoration of operating privileges, the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.

"(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restrictive license under 75 Pa.C.S. §1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person to operating only motor vehicles equipped with an approved ignition interlock system.

"(3) During the year immediately following restoration of the person's operating privilege and thereafter until the person obtains an unrestricted license, the person shall not operate any motor vehicle on a highway within this Commonwealth unless the motor vehicle is equipped with an approved ignition interlock system.

"(4) One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may apply for an additional replacement license under 75 Pa.C.S. §1951(d) that does not contain the ignition interlock system restriction.

"(5) A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. §3731 or a similar out-of-state offense who does not apply for an ignition interlock restrictive license shall not be eligible to apply for the restoration of operating privileges for an additional one year after otherwise being eligible for restoration under paragraph (1) . . . ." 42 Pa.C.S. §7002; 42 Pa.C.S. §7003.

A review of the pertinent legislative history reveals that the Ignition Interlock Law was enacted to comply with a federal mandate imposed as a condition of federal money being paid to the state for highway improvements. *Legislative-Journal House* (June 2000 at page 1410). Both the Senate and the House Journals reveal very little debate in this measure and it was passed overwhelmingly by both the Senate and the House. Although the legislative history does not specifically reveal the goal of the statute, we presume that it was intended to deter recidivist offenders of Pennsylvania's Driving Under the Influence Law from re-offending.

## II. EQUAL PROTECTION

When assessing the constitutionality of a statute, we are reminded that every legislative enactment enjoys a strong presumption of constitutionality. See, *e.g., Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995). Nonetheless, one of the most important functions of an independent judiciary is to determine when or whether the legislature oversteps its authority by promulgating a law repugnant to our constitution. See *e.g., Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568 (1997).

In evaluating any constitutional challenge, our first analytical step is to determine the test which should be applied. There are three such tests:

(1) Strict scrutiny—A law must be strictly scrutinized when it affects a fundamental right or applies to a suspect class such as race or religion.

(2) Intermediate scrutiny—This type of evaluation is used whenever a law applies to "important rights" or "sensitive classifications" such as gender.

(3) Rational basis—When none of the above apply, the least restrictive "rational basis" test must be used. *Commonwealth v. McMullen,* 756 A.2d 58, 61-62 (Pa. Super. 2000).

With respect to driver's licenses, our legislature has provided a definition of "operating privilege" which defines a person's right to utilize a motor vehicle on a highway as a "privilege" and not a "property right or civil right." 75 Pa. C.S. §102. Moreover, our Supreme Court has specifically held that "[s]ince a driver's license is a privilege and not a fundamental right, legislation affecting it must be evaluated under a 'rational basis' analysis." *Plowman v. PennDOT,* 535 Pa. 314, 318, 635 A.2d 124, 126 (1993).[1]

---

1. We note that at least one appellate court has criticized the classification of a driver's license as a mere privilege by pointing out: "It is hard to accept the continued characterization of a license to drive as a privilege. No one will deny that we have reached a time in our modern way of life when the motor vehicle has clearly become a necessity to many people. The very livelihood of many, such as chauffeurs, truckers, traveling salesmen, men who work in skilled or unskilled labor, depends upon the operation of a motor vehicle. Their drivers' licenses are just as valuable as a license to engage in an occupation or profession . . . ." *PennDOT v. Slater,* 75 Pa. Commw. 310, 319, 462 A.2d

In applying the "rational basis" test, we are instructed to utilize a two-prong analysis: "(1) whether there exists any legitimate state interest; and (2) whether the statute is reasonably related to promoting a legitimate state interest." *Paz v. Pennsylvania Housing Finance Agency,* 722 A.2d 762, 766 (Pa. Commw. 1999). Stated differently: "In analyzing any statute under the 'rational basis test,' we must determine whether the legislation has some relationship to the identified state interest and whether the relationship is objectively reasonable." *Plowman, supra* 535 Pa. at 320, 635 A.2d at 127.

With respect to the first prong of the "rational basis test", we have little difficulty concluding that the Ignition Interlock Law was enacted to promote a "legitimate state interest." It is beyond question that the state has a right to deter people from operating a vehicle under the influence of alcohol. Where an individual has shown that he or she is a recidivist offender of the DUI statute, we believe that the state has a legitimate interest in requiring ignition interlocks in order to deter future episodes of driving under the influence.

It is the second prong of the "rational basis" test which causes us significant concern. The defendant points out that the Ignition Interlock Law treats different classes of people differently and that this disparate treatment cannot be reasonably related to any legitimate state interest. In an equal protection context, out Supreme Court has noted:

---

870, 875 (1983). While we may agree with the Commonwealth Court's language in *Slater,* we nonetheless are constrained by the myriad of subsequent decisions which hold that the right to drive a car is a mere privilege.

"The essence of the constitutional principal of equal protection under the law is that like persons and like circumstances will be treated similarly. . . . However, it does not require that all persons under all circumstances enjoy identical protection under the law. . . . The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, . . . and does not require equal treatment of people having different needs. . . ." *Curtis v. Kline,* 542 Pa. 249, 254-55, 666 A.2d 265, 267-68 (1995). (citations omitted) So long as a classification is reasonable and based upon some ground of difference having a fair and substantial relation to the object of the classification so that similarly situated individuals are treated alike, it is permissible.

Applying the principals outlined above to the Ignition Interlock Law, we note that the following classes of people are treated differently:

(1) Lease v. ownership—The Ignition Interlock Law clearly applies to vehicles owned by an offender. The Act is silent with respect to what occurs when the offender has leased a vehicle. We believe the Act can be interpreted in two different ways. Under one interpretation, the act could be read not to apply at all in a lease context. Under this interpretation, a DUI offender who leases a vehicle would not be required to install an ignition interlock. Under a different interpretation, a DUI offender who leases a motor vehicle would not be permitted to obtain restoration of his license even if he installs an interlock system inside his vehicle. Under either interpretation, lessees of vehicles are treated much differently than owners of vehicles.

(2) Supervised v. non-supervised—The Ignition Interlock Law requires the court to "certify" that an interlock system has been installed. Although the legislature does not so state, it is presumed that such certification would be made by a county probation officer exercising supervision over the DUI offender. Indeed, the judicial system would have no other method of verifying installation of an interlock or offering a "certificate" other than through a probation office. A problem arises when an individual to whom the Ignition Interlock Law is applicable has already completed his term of supervision. Under these circumstances, the court would have no method by which to "certify" installation of an ignition interlock. Accordingly, a non-supervised offender would not be able to obtain an ignition interlock restricted license.

(3) Ownership v. operation—The Ignition Interlock Law does not limit the obligation to install an interlock device to vehicles that are actually driven by a second time offender. Rather, the Act requires that all vehicles "owned" by the person be subject to an interlock. Therefore, whenever an offender owns a vehicle jointly with a spouse or child, that vehicle will be required to have an interlock device even if the offender never drives that vehicle.[2] On the other hand, an offender who does not

---

2. Although we recognize that costs of installing an ignition interlock is an issue best left to the legislature, we are troubled nonetheless by the impact of this Act on households with multiple vehicles. At a cost of approximately $175 per month per vehicle, an offender who owns two or three vehicles could be required to expend significant monthly sums in order to retain a license. Moreover, a self-employed offender who owns multiple vehicles used in a business could face prohibitive expense in order to install an interlock in all of the ve-

own a vehicle but who routinely drives cars owned or leased by family members would be precluded from driving even if the family-owned vehicle possessed an interlock. 42 Pa.C.S. §7003 precludes non-owners of cars from obtaining ignition interlock licenses. Thus, non-owners would not be able to drive for one year even if they are willing to install an interlock on vehicles they routinely operate. Conversely, persons who own cars would be permitted to obtain an ignition interlock license even if they do not routinely operate the vehicle with the interlock device.

We can conceive no rational or reasonable basis to distinguish between the classes of people outlined above. The state's legitimate desire to deter recidivist DUI offenses should apply equally to leased vehicles and owned vehicles and to drivers who are supervised on probation and those who are not. The goal of this statute is to limit the ability of recidivist DUI offenders to operate vehicles without an ignition interlock. A simple statute preventing DUI recidivists from operating a vehicle without an ignition interlock would be sufficient to accomplish the goal of this legislation. Drawing arbitrary and unreasonable distinctions between the different classes outlined above does not.

We agree with the Cumberland County Court of Common Pleas which stated in *Commonwealth v. Mockaitis* 50 Cumb. 184 (2001):

"In summary, limiting multiple DUI offenders following a one-year license suspension to a restricted license

---

hicles owned by his business. We can perceive situations where wealthy people would be able to afford to buy an ignition interlock license while poorer persons could not.

during the second year that prohibits them from operating a motor vehicle unless it is equipped with an ignition interlock device would be sufficient to accomplish the goal of the legislation. Adding the requirement that the offender actually own a vehicle, and that every vehicle owned by the offender be equipped with the device, is arbitrary, unreasonable and therefore unconstitutional." 50 Cumb. at 190.

Accordingly, we will grant the defendant's motion to modify sentence and will eliminate that portion of our sentencing order which requires compliance with the Ignition Interlock Law.

## III. SEPARATION OF POWERS

Since the earliest days of our republic, our democracy has been founded upon the axiom that there are three separate and co-equal branches of government.

"Generally speaking, the executive branch has the power to recommend legislation and the power and the duty to see that the laws are faithfully administered and carried out. The legislative branch has the power and duty to pass legislation; and the courts have the power, the duty and the responsibility of interpreting the constitution and all legislation and determining whether legislation and presidential orders and all other questions and issues meet or violate the requirements of the constitution." *Stander v. Kelley,* 433 Pa. 406, 422, 250 A.2d 474 (1969).

Where one branch of government seeks to infringe upon the exclusive responsibility of another, that effort should be struck down. See *L.J.S. v. State Ethics Commission,* 744 A.2d 798 (Pa. Commw. 2000). Stated dif-

ferently, "no branch should exercise the functions exclusively committed to the other branch." *Sweeney v. Tucker,* 473 Pa. 493, 508, 375 A.2d 698, 705 (1977). Even a statute enacted pursuant to the legislature's police power which furthers a laudable public policy must be struck down if it is found to interfere with another co-equal branch of government. See *Commonwealth v. Stern,* 549 Pa. 249, 701 A.2d 568 (1977); *Heller v. Frankston,* 76 Pa. Commw. 294, 302-303, 464 A.2d 581, 584 (1983).

Pennsylvania's Motor Vehicle Code sets forth a statutory scheme which requires the executive branch of government to issue and regulate motor vehicle licenses. The legislature has directed the Pennsylvania Department of Transportation (an executive agency) to issue driver's licenses (75 Pa.C.S. §1510), maintain records regarding driver's licenses (75 Pa.C.S. §1516), accept surrender of a license (75 Pa.C.S. §1540), and complete various other functions relative to driver's licenses within Pennsylvania. In fact, section 1531 of the Vehicle Code specifically states: "The department shall administer an integrated system limited to the authority granted to the department in this title for revocation and suspension of operating privileges and for driver education, testing and control . . . ." 75 Pa.C.S. §1531.

Within this statutory scheme, the courts play a relatively minor role. Of course, the judiciary of this Commonwealth determines whether an individual commits one of the offenses which may have subsequent license implications. However, the courts' role is limited to determining guilt. Thereafter, "license suspensions are collateral civil consequences rather than criminal penalties." *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174

(1994). Under our statutory scheme, actual imposition of a license suspension "has been vested in an administrative agency over which the criminal judge has no control and for which he has no responsibility." *PennDOT v. McCafferty,* 563 Pa. 145, 158-59, 758 A.2d 1155, 1162 (2000) citing *Duffey, supra* at 442, 639 A.2d at 1177.[3]

In the face of this statutory scheme, the legislature enacted the Ignition Interlock Law which requires the judiciary to "certify" when a motorist has properly installed an interlock device. No money was allocated by the legislature to allow the hiring of people to perform this function nor is there a mechanism for a defendant to challenge entitlement to a certificate. Essentially, the Ignition Interlock Law requires the judiciary to perform functions which the Vehicle Code has otherwise assigned to the executive branch of government. Moreover, there is no practical way that the judiciary can accomplish the task assigned to it once a defendant is no longer under the supervision of a court.

Our Supreme Court has recognized that the separation of powers doctrine has historically protected the judiciary against incursions into areas other than its conduct of adversary litigation. *In re 42 Pa.C.S. §1703,* 482 Pa. 522, 532-33, 394 A.2d 444, 449 (1978). With respect to the Ignition Interlock Law, we believe that the legis-

---

3. The courts also exercise judicial review over a license suspension decision of the department. However, the scope of the court's review is extremely limited. We are not permitted to collaterally vacate an underlying criminal conviction nor are we allowed to act as a "board of clemency." Rather, we are limited to determining whether an underlying conviction actually exists and whether the department acted within its statutory authority as a result of that conviction. See *e.g., Weber v. PennDOT,* 675 A.2d 359 (Pa. Commw. 1996).

lature has attempted to impose executive regulatory responsibilities on the judicial branch of government in violation of the doctrine of separation of powers. For this reason also, we believe the Ignition Interlock Law as drafted is unconstitutional.

## IV. CONCLUSION

We have no doubt that the legislature can enact a law which requires repeat DUI offenders to utilize ignition interlocks. However, the existing statute as drawn is fatally flawed in that it creates arbitrary and unreasonable classes of individuals which are treated differently for no rational reason. Likewise, it imposes regulatory responsibilities upon the judiciary without providing funding or a mechanism for the judiciary to always perform those functions. As currently drafted, we do not believe that the Ignition Interlock Law passes constitutional muster. Accordingly, we will decline to enforce it within Lebanon County. In light of our opinion as outlined above, we deem it unnecessary to address the remaining issues in defendant's brief.

## ORDER

And now, April 19, 2001, upon consideration of the request by the defendant to modify sentence, such request is granted and the defendant is relieved of any obligation to comply with the Pennsylvania Ignition Interlock Law (42 Pa.C.S. §7002 and 42 Pa.C.S. §7003). In light of our ruling that the Ignition Interlock Law is unconstitutional, we direct that a copy of this opinion and order be mailed to the Pennsylvania Attorney General.