**Susan OCTAVE on behalf of James OCTAVE, an incapacitated person, and Susan Octave**

**v.**

**David Wade WALKER, and Commonwealth of Pennsylvania, Department of Transportation.**

**Appeal of: Department of Transportation.**

**Susan Octave on behalf of James Octave, an incapacitated person, and Susan Octave**

**v.**

**David Wade Walker, and Commonwealth of Pennsylvania, Department of Transportation.**

**Appeal of: David Wade Walker.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2011.
Decided Dec. 30, 2011.
Reargument Denied Feb. 15, 2012.
Publication Ordered March 8, 2012.

Kemal A. Mericli, Pittsburgh, for appellant Commonwealth of Pennsylvania, Department of Transportation.

Jeanette Hsin Ho, Pittsburgh, for appellant David Wade Walker.

David A. Colecchia and Justin P. Schantz, Greensburg, for appellees.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

The Commonwealth of Pennsylvania, Department of Transportation (DOT) and David Wade Walker (Walker) appeal by permission the interlocutory order of the Court of Common Pleas of Westmoreland County (trial court) which denied Walker's renewed motion for reconsideration of its order that denied Walker's leave to access and copy sealed files pertaining to involuntary commitments, and to compel the execution of authorizations for mental health and involuntary commitment records and answers to an interrogatory.

On June 21, 2007, Susan Octave's husband, James Octave, was injured after he was struck by a tractor trailer driven by Walker. James Octave was either standing or sitting by a group of mailboxes near his home prior to the incident. The incident occurred on Agnew Road, a state road located in Greensburg, Westmoreland County.

The Pennsylvania State Police conducted an investigation. Based on eyewitness interviews, the State Police issued a report wherein it concluded that James Octave attempted to commit suicide by jumping under the trailer of the truck.

On April 27, 2009, Susan Octave, filed a complaint on her husband's behalf, as an incapacitated person, and on her own behalf against DOT, Walker, and a number of other parties based upon their purported negligence. Complaint, April 27, 2009; Reproduced Record (R.R.) at 1–21.[1] The complaint alleged, *inter alia*, that James Octave suffered a number of *mental injuries*,[2] in addition to his *physical injuries*, as a result of the incident and sought damages. Complaint, ¶ 25 at 6–8; R.R. at 7–9.

In light of the State Police's conclusion that James Octave attempted to commit suicide, Walker and DOT sought to discover information regarding James Octave's mental health history and access to his mental health records. Susan Octave refused to provide this information and Walker and DOT filed a motion for leave to access and copy sealed files pertaining to the involuntary commitments of James Octave pursuant to the Mental Health Procedures Act (MHPA).[3]

On February 22, 2010, Susan Octave filed an *amended* complaint which alleged that James Octave only suffered *physical* injuries as a result of the incident and sought damages for the physical injuries.

---

1. By order dated September 24, 2009, the trial court granted the preliminary objections of a number of the other defendants and they were dismissed as defendants.

2. Specifically, the complaint alleged that James Octave suffered from nervousness, emotional tension, and aggravation of mental health conditions, mental anguish and emotional and psychological trauma.

3. Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. §§ 7101–7503.

Amended Complaint, February 22, 2010, ¶ 15 at 5–6, R.R. at 82–83.

On August 13, 2010, the trial court issued an opinion and order disposing of Walker's and DOT's motions. Citing *Gormley v. Edgar*, 995 A.2d 1197 (Pa.Super.2010), the trial court denied the motion for leave to access and copy the sealed files pertaining to the involuntary commitments of James Octave and the motion to compel the execution of authorizations pertaining to his mental health records and involuntary commitment records and full and complete answers to Interrogatory No. 63.[4] The trial court based its conclusion on the fact that Susan Octave amended her complaint and removed allegations pertaining to mental injuries and damages sustained by James Octave in the incident.[5]

4. Interrogatory No. 63 provided, in pertinent part:

> 63. Did Plaintiff at any time throughout his entire lifetime suffer from mental illness, or seek treatment regarding his mental health? If so, please answer the following:
> a. Any and all official diagnosis given to Plaintiff by a medical physician/institution regarding his mental health;
> b. the length of time that Plaintiff suffered from mental/psychological issues;
> c. List all facilities that Plaintiff treated throughout his lifetime for his mental/psychological issues;
> d. List all physicians with whom Plaintiff treated throughout his lifetime for his mental/psychological issues;
> e. Was Plaintiff treating for his mental health issues at the time of the incident giving rise to this litigation;
> f. Has Plaintiff ever attempted suicide at any time throughout his life and if so, when;
> g. Has Plaintiff ever spoken about committing suicide or terminating his life to anyone, throughout his lifetime;
> h. Has Plaintiff ever been involuntarily committed to a mental health facility and if so, please provide the dates and names of the facilities;
> i. Has Plaintiff ever voluntarily checked into a mental health facility and if so, please provide the dates;
> j. Has Plaintiff ever lost a job, or had to resign from a job as a result of his mental illness and;
> k. How did Plaintiff's mental illness affect his day to day activities.

Interrogatories Directed to James Octave at 24–25; R.R. at 151–152.

5. The trial court stated the following, in pertinent part:

> Susan Octave's Amended Complaint is controlling as to any existing allegations for the damage claims and therefore the Court concludes that Susan Octave has *not* placed her husband's mental health history and treatment into this litigation by the mere filing of a Complaint as to seeking damages he sustained as a result of this incident. The damages as alleged for Susan Octave's husband's claim in his Amended Complaint are general averments. As cited in said Gormley case, general averments of shock, mental anguish and humiliation, which are routinely recoverable damages for non-economic loss in Pennsylvania, alone does not place the party's mental condition at issue, nor results in a waiver of privilege. See *Gormley*, [995 A.2d at] 1205. Further, the Gormley case goes on to state that, in contrast, allegations of mental injury, severe emotional trauma requiring treatment or psychiatric/psychological conditions may, if otherwise relevant, result in the waiver of said privileges protecting confidential communication pertaining to prior treatment of those conditions. *Id.* . . . .
> This Court is aware of the case of *Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998)[, appeal dismissed, 560 Pa. 220, 743 A.2d 451 (2000) ] and other cases cited by [Walker and DOT]. This Court specifically concludes that all the cases cited by [Walker and DOT] address the issue of mental health records and treatment as it relates to either permitting any damages to be awarded to [James Octave] or as to being a factor as to the amount of damages to be awarded to [James Octave]. In addition, all of said cases cited allege specific mental health issues as the reason for the damages, such as medically recognized conditions as emotional distress and anxiety. Specifically, per Kraus, [Walker and DOT] substantially rely upon those principles stated therein for

On January 13, 2011, Walker filed a motion for reconsideration of the trial court's denial of the motions. On February 28, 2011, the trial court again denied the motion for reconsideration and certified the order for immediate appeal pursuant to the provisions of Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b).[6] Walker and DOT then filed the present appeals.[7]

■■■ In this appeal[8], both Walker and DOT contend that the trial court erred when it denied them access to James Octave's mental health records and involuntary commitment records. More specifically, both Walker and DOT contend that the confidentiality provisions of the MHPA were "waived" by Susan Octave because she placed her husband's mental health at issue in this case by filing the complaint. Walker and DOT's defense to this action in

> their discovery requests in regard to asking the Court to grant them.
> Therefore, this Court concludes that the rationale as for the holdings in Kraus and the additional cited cases only apply if Susan Octave places her husband's mental condition at issue in a civil trial and therefore has made an implicit waiver of pertinent statutory privileges, of which this Court has indicated already that Susan Octave has not done so. . . .

Common Pleas Court Opinion, August 13, 2010, R.R. at 182–183 (emphasis in original).

6. Section 702(b) of the Judicial Code provides, in pertinent part:

> (b) **Interlocutory appeals by permission.**—When a court . . ., in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

negligence is that James Octave intentionally caused his own injuries by throwing himself under Walker's vehicle in an unsuccessful suicide attempt. Denying them access to these materials would be manifestly unfair, grossly prejudicial and an affront to the truth-seeking function of the courts as Susan Octave should not be permitted to bring suit against Walker and DOT while depriving them of information which could totally absolve them of liability.

As the Supreme Court has previously noted:

> The ["Mental Health Procedures Act/ MHPA"][9] governs the provision of inpatient psychiatric treatment and involuntary outpatient treatment. The purpose of the statute is to assure the availability of adequate treatment to

*See also Gormley*, 995 A.2d at 1200–1202 (holding that an order compelling the disclosure of mental health records that are purportedly privileged under the MHPA, the Mental Health and Mental Retardation Act of 1966 (MHMRA), Act of October 20, 1966, Special Sess., P.L. 96, *as amended*, 50 P.S. §§ 4101–4704, the Pennsylvania Drug and Alcohol Abuse Control Act (PDAACA), Act of April 14, 1972, P.L. 221, *as amended*, 71 P.S. §§ 1690.101–1690.115, and Section 5944 of the Judicial Code, 42 Pa.C.S. § 5944, is a collateral order that is immediately appealable under Pa.R.A.P. 313(b)).

7. Walker's appeal was docketed in this Court at No. 532 C.D. 2011 and DOT's appeal was docketed in this Court at No. 540 C.D. 2011. By order dated June 2, 2011, this Court granted permission to appeal the trial court's order and consolidated the appeals for disposition.

8. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." *Gormley*, 995 A.2d at 1202 (citation omitted).

9. Act of July 9, 1976, P.L. 817, *as amended*.

persons who are mentally ill, and to establish procedures to effectuate this purpose. [Section 102 of the MHPA,] 50 P.S. § 7102. The confidentiality of mental health records is the *sine qua non* of effective treatment. Its purpose is to enable effective treatment of those with mental illness by encouraging patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender.

The importance of confidentiality cannot be overemphasized. To require the Hospital to disclose mental health records during discovery would not only violate [the patient]'s statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general. The purpose of the [MHPA] of seeking 'to assure the availability of adequate treatment to persons who are mentally ill,' 50 P.S. § 7102, would be severely crippled if a patient's records could be the subject of discovery in a panoply of possible legal proceedings. . . .

*Zane v. Friends Hospital*, 575 Pa. 236, 250–251, 836 A.2d 25, 33–34 (2003).

To this end, Section 111(a) of the MHPA, 50 P.S. § 7111(a), expressly limits

the disclosure of mental health records to the following limited circumstances:

(a) All documents concerning persons in treatment shall be kept confidential and, without the persons written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to section 110; [10]

(3) a court in the course of legal proceedings authorized by this act; [11] and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. . . .

Both this Court and the Superior Court of Pennsylvania have determined that these statutory protections may be "waived" if one places his or her mental health at issue. *Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998), *appeal dismissed*, 560 Pa. 220, 743 A.2d 451 (2000); *Rost v. State Board of Psychology*, 659 A.2d 626, 629 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 699, 670 A.2d 145 (1995).

---

10. Section 110(b) of the MHPA, 50 P.S. § 7110(b), provides, in pertinent part, that "[a]ll such applications, petitions, statements and certifications shall be submitted to the county administrator in the county where the person was made subject to examination and treatment [under Section 302] and such other county ... in which the person usually resides."

11. The Supreme Court has noted:
[B]y the clear terms of the statute, disclosure to a court is not permitted in any legal proceeding, but only in those legal proceedings authorized by the [MHPA]. Our review of the [MHPA] reveals certain legal pro-

ceedings that are authorized by the statute, that is, proceedings falling within the confines of the act. These include involuntary emergency treatment, [Section 302 of the MHPA,] 50 P.S. § 7303; court-ordered involuntary treatment, [Section 304 of the MHPA,] 50 P.S. § 7304 and [Section 305 of the MHPA,] § 7305; transfer of persons in involuntary treatment, [Section 306 of the MHPA,] 50 P.S. § 7306; and voluntary mental health commitment determinations, [Sections 204 and 206 of the MHPA,] 50 P.S. §§ 7204 and 7206. . . .
*Zane*, 575 Pa. at 250, 836 A.2d at 32–33.

In *Kraus,* the Superior Court held that a plaintiff had waived the confidentiality protections of, *inter alia,* the MHPA and Judicial Code by filing a personal injury lawsuit and seeking damages for permanent injury thereby placing his life expectancy at issue in the case. In *Kraus,* the plaintiff sought damages after being struck by a car. There, the trial court admitted into evidence medical records which demonstrated that the plaintiff suffered from chronic drug and alcohol abuse. Although the plaintiff asserted that this information was protected by various statutory privileges, the trial court ruled that the privileges were impliedly waived when the plaintiff decided to file a personal injury suit where life expectancy was at issue. The Superior Court agreed and stated that allowing the plaintiff to pursue a claim for permanent injury while simultaneously barring the defendants from access to plaintiff's long history of drug and alcohol abuse "would be manifestly unfair and grossly prejudicial." *Kraus,* 710 A.2d at 1145. The Superior Court went on to state:

> We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and ***then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability*** . . . . rather, the General Assembly must have intended the privileges to yield before the state's compelling interest 'in seeing that truth is ascertained in legal proceedings and fairness in the adversary process.'

*Kraus,* 710 A.2d at 1145 (emphasis added).

Likewise, in *Gormley,* the Superior Court held that a plaintiff had waived the confidentiality provisions of the Section 5944 of the Judicial Code by claiming damages for anxiety. *Gormley,* 995 A.2d at 1204–1206.

In *Gormley,* the Superior Court analyzed the factors supporting the finding of an implicit waiver in those cases, stating:

> Ms. Gormley takes issue, however, with the trial court's application of Kraus, supra, on the facts of this case. She construes Kraus as allowing the introduction of confidential mental health records where *permanent* injuries are alleged, but disputes that she asserted such permanent mental injuries here. Ms. Gormley's brief at 16–17. Mr. Edgar counters that Ms. Gormley's reliance on Kraus, for the proposition that "permanency" is the determinative factor in whether mental health records are entitled to protection, is misplaced. Mr. Edgar's brief at 19. We concur. The permanence of the injury was pivotal in Kraus because it made evidence of plaintiff's chronic drug and alcohol abuse relevant to the jury's evaluation of his life expectancy, and hence, admissible. "Permanency" was not the factor herein that compelled the disclosure of Ms. Gormley's mental health records. Ms. Gormley directly placed her mental condition at issue when she alleged that she suffered from anxiety as a result of the accident. Absent other considerations militating against disclosure, the records are discoverable. It would clearly be unfair for a party to seek recovery for anxiety if that mental health issue predated the accident. Moreover, where a party seeks recovery for aggravation of a pre-existing mental health condition, records of prior treatment for that condition are discoverable.

*Gormley,* 995 A.2d at 1206 (emphasis in original and footnote omitted).

The Superior Court concluded that Mrs. Gormley had placed her mental condition at issue by alleging that the accident caused her to suffer anxiety, and thus, the defendant was entitled to access to her

mental health records. In arriving at this conclusion, the court stated that it would be unfair for the plaintiff to seek recovery for anxiety if she was suffering from that condition prior to the accident.

In the present controversy, this Court must disagree with the trial court that Susan Octave did not "waive" the confidentiality protections of the MHPA and Judicial Code by filing a personal injury lawsuit seeking damages for Walker's and DOT's alleged negligence. Susan Octave directly put James Octave's mental history, especially as it pertains to his previous suicide attempts, or considerations or contemplations of suicide, by filing a complaint alleging negligence by Walker and DOT in connection with the accident. Susan Octave alleged that Walker negligently struck James Octave with his motor vehicle. However, Walker claims that he was not negligent, and that James Octave was injured when he threw himself under Walker's vehicle. The information sought in Interrogatory No. 63 relates directly to the issue of DOT's and Walker's liability, the defenses raised by Walker and DOT, and is information which impacts upon causation. Causation is certainly critical in a trial of a negligence action, if not more so than damages. Barring Walker and DOT from all access to James Octave's long history of mental health issues would be unfair and grossly prejudicial.

This Court holds that Susan Octave must provide a full and complete answer to Interrogatory No. 63 and provide all medical records requested by DOT and Walker and to the trial court for an *in camera* review, so that the trial court may identify those records which pertain or relate, in any manner, to James Octave's history of suicidal attempts and/or contemplations, or desires or attempts to harm himself.

The order of the trial court is reversed and this matter is remanded. The parties are directed to proceed in accordance with the instructions in this opinion within sixty days from the date of this Court's accompanying order.

### ORDER

AND NOW, this 30th day of December, 2011, the order of the Court of Common Pleas of Westmoreland County, dated February 28, 2011 at No. 4128 of 2009, is REVERSED and the matter is remanded. Susan Octave is directed to, within sixty-days from the date of this Order, provide a full and complete answer to Interrogatory No. 63 and provide all medical records requested by DOT and Walker to the trial court for an *in camera* review. The trial court shall identify those records which pertain or relate, in any manner, to James Octave's history of suicidal attempts and/or contemplations, or his desires or attempts to harm himself.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

As noted by the Majority, Section 111(a) of the Mental Health Procedures Act (MHPA)[1] expressly limits the disclosure of mental health records to the following limited circumstances:

(a) All documents concerning persons in treatment shall be kept confidential and, without the persons written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to section 110;

---

1. Act of July 9, 1976, P.L. 817, *as amended,* 50 P.S. § 7111(a).

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. . . .

The Supreme Court has interpreted the foregoing provisions of Section 111 of the MHPA as follows:

> The unambiguous terms contained in the provision regarding the confidentiality of medical records leaves little room for doubt as to the intent of the Legislature regarding this section. As noted above, "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone." 50 P.S. § 7111(a). The provision applies to *all* documents regarding one's treatment, not just medical records. Furthermore, the verbiage that the documents "*shall be kept confidential*" is plainly not discretionary but mandatory in this context—it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released "*to anyone*" without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the [MHPA] is without doubt—there shall be no disclosure of the treatment documents to anyone.

> Our conclusion regarding the meaning and broad scope of section 7111 is amply supported by the virtually unanimous case law interpreting this provision.

> The only exceptions to this prohibition are if the person at issue has given written consent to the disclosure of the documents or if the disclosure falls into one of the four exceptions to the prohibition against disclosure. . . .

*Zane v. Friends Hospital*, 575 Pa. 236, 247–248, 836 A.2d 25, 31–32 (2003) (emphasis in original and citations omitted).[2]

In this case, it is not alleged that Octave has consented in writing to the release of the mental health records or that one of the statutory exceptions of Section 111(a) of the MHPA applies. Rather, Walker and DOT contend that Octave placed her husband's mental condition at issue, thereby implicitly waiving the confidentiality protections of Section 111(a), by merely filing the instant amended complaint alleging that he suffered purely physical injuries.

It is true that a waiver of a privilege, such as the psychologist—patient privilege under Section 5944 of the Judicial Code, 42 Pa.C.S. § 5944,[3] may occur where the pa-

---

**2.** *See also Christy ex rel. Christy v. Wordsworth-At-Shawnee*, 749 A.2d 557, 559–560 (Pa.Cmwlth.2000) ("The legislative purpose of section 111 is to protect the confidentiality of records of persons receiving treatment for mental illness. All documents relating to a person in treatment are confidential unless one of the statutory exceptions applies or the patient has consented in writing to the release of the documents. . . .") (citations and footnote omitted).

**3.** Section 5944 of the Judicial Code provides:

> No psychiatrist or person who has been licensed under the [Professional Psychologists Practice Act, Act of March 23, 1972, P.L. 136, *as amended*, 63 P.S. §§ 1201–1218], to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same

tient places the confidential information at issue in a case. *Rost v. State Board of Psychology,* 659 A.2d 626, 629 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 543 Pa. 699, 670 A.2d 145 (1995), (citing *Premack v. J.C.J. Ogar, Inc.,* 148 F.R.D. 140 (E.D.Pa.1993)). In turn, in *Premack,* the District Court considered the rationale underlying the finding of such an implicit waiver, stating:

> To allow a plaintiff to hide a previously existing condition behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of justice. Because such a result is unreasonable and unfair, it can hardly be deemed to have been what the Pennsylvania Legislature intended. In this regard, it is worth noting that in Pennsylvania the physician-patient privilege is implicitly waived if a civil suit is brought placing that individual's physical condition directly at issue. 42 Pa.C.S. § 5929.[4] Certainly, Pennsylvania's policy of encouraging individuals to seek medical treatment for physical problems when such treatment is required is no less important than its policy of encouraging individuals to seek psychological treatment when such treatment is required, yet the Pennsylvania legislature has decided that an implied waiver will not hamper its social policy with regard to the physician-patient privilege.

> \*    \*    \*

In a civil matter, however, there are numerous ways—other than an absolute bar—to ensure that both an individual's privacy and the truth-seeking function of the courts are sufficiently protected. First of all, an individual is always free to leave his or her mental condition out of a complaint—thus assuring continued confidentiality.... Second, if placed at issue, the privilege is only waived as to those communications 'directly related' to the incident that is the subject matter of the litigation. Finally, it should be noted that an implied waiver simply ensures that an individual not receive more damages than he or she deserves. Recovery will not necessarily be barred by release of information revealing a pre-existing condition. A plaintiff is always free to argue that such a condition has been aggravated by a recent accident or injury; he or she is simply precluded from falsely alleging that such a condition was caused by that injury.

As other federal courts have noted, implied waivers of privilege are justified by "interests of the state in seeing that truth is ascertained in legal proceedings and fairness in the adversary process." This court therefore believes that if the Pennsylvania Supreme Court were to decide this issue it would hold that when an individual in a civil action places his or her mental condition directly at issue the psychologist-patient privilege is implicitly waived.

*Premack,* 148 F.R.D. at 145 (citations and footnote omitted).

Thus, in *Kraus v. Taylor,* 710 A.2d 1142, 1144–1145 (Pa.Super.1998), *appeal dismissed,* 560 Pa. 220, 743 A.2d 451 (2000), the Superior Court held that a plaintiff

---

basis as those provided or prescribed by law between an attorney and client.

4. Section 5929 of the Judicial Code provides:
   No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

had waived the confidentiality protections of, *inter alia,* the MHPA and the Judicial Code by filing a personal injury lawsuit and seeking damages for permanent injury thereby placing his life expectancy at issue in the case. Likewise, in *Gormley v. Edgar,* 995 A.2d 1197, 1204–1206 (Pa.Super.2010), the Superior Court held that a plaintiff had waived the confidentiality provisions of the Section 5944 of the Judicial Code by claiming damages for anxiety thereby placing her mental condition at issue in the case.

In contrast, in this case, Octave did not raise a claim for damages based upon her husband's mental injuries in the instant amended complaint. In the absence of such a claim, it cannot be said that Octave directly placed her husband's mental condition at issue as the plaintiffs had in *Kraus* and *Gormley.* *See, e.g., Premack,* 148 F.R.D. at 145 ("In a civil matter, however, there are numerous ways—other than an absolute bar—to ensure that both an individual's privacy and the truth-seeking function of the courts are sufficiently protected. First of all, an individual is always free to leave his or her mental condition out of a complaint—thus assuring continued confidentiality. . . .") (citation omitted).

Moreover, in light of the clear and circumscribed provisions of the MHPA, I do not believe that an implicit waiver of its confidentiality provisions can be found based upon the mere filing of the instant amended complaint. *See Zane,* 575 Pa. at

247–248, 836 A.2d at 31–32 ("The unambiguous terms contained in the provision regarding the confidentiality of medical records leaves little room for doubt as to the intent of the Legislature regarding this section. . . . [T]he verbiage that the documents '*shall* be kept confidential' is plainly not discretionary but mandatory in this context—it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released '*to anyone*' without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the [MHPA] is without doubt—there shall be no disclosure of the treatment documents to anyone. . . . The only exceptions to this prohibition are if the person at issue has given written consent to the disclosure of the documents or if the disclosure falls into one of the four exceptions to the prohibition against disclosure. . . .") (emphasis in original and citations omitted).[5]

This is particularly so where, as here, there are other less intrusive means by which Walker and DOT can contest causation in this case, i.e., through the testimony of Walker and the other eyewitnesses to the incident, and through the evidence that can be gleaned from the contents of the PSP files and the divorce and PFA records that are subject to discovery under the trial court's order. *See, e.g., Gates v. Gates,* 967 A.2d 1024, 1032 (Pa.Super.),

---

**5.** *See also In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 151, 415 A.2d 73, 77–78 (1980) ("Clearly, the privacy interest of the patients which is implicated under the instant set of facts is the interest in avoiding disclosure of personal matters. This privacy interest finds explicit protection in the Pennsylvania Constitution, Art. 1, § 1, which provides, in pertinent part: 'All men . . . have certain inherent and indefeasible rights, among which are those . . . of acquir-

ing, possessing, and protecting property and reputation. . . .' Disclosure of confidences made by a patient to a physician, or even of medical data concerning the individual patient could, under certain circumstances, pose such a serious threat to a patient's right not to have personal matters revealed that it would be impermissible under either the United States Constitution or the Pennsylvania Constitution. . . .").

*petition for allowance of appeal denied,* 602 Pa. 667, 980 A.2d 608 (2009) ("Presuming Father's primary purpose in seeking the privileged documents was to ensure the existing custody order was in [the child]'s best interest, we recognize that Father was entitled to place Mother's mental condition at issue in the custody proceedings. Nonetheless, less intrusive means exist for the trial court to make a determination as to Mother's suitability as a custodial parent, rather than releasing Mother's privileged mental-health records from her ... hospitalization and vitiating her right to confidentiality [under the MHPA]. For example, Father can utilize Mother's testimony from the ... hearing to attempt to sustain his burden of proving modification is warranted, and if further inquiry into Mother's mental health is necessary, the trial court can order Mother to submit to a psychological evaluation pursuant to [Pa.R.C.P. No.] 1915.8. However, Mother's mental health records are not subject to disclosure.").[6]

Based on the foregoing, I firmly believe that the trial court did not err in denying the motion for leave to access and copy the sealed files pertaining to the involuntary commitments of Octave's husband, and in denying the motion to compel the execution of authorizations pertaining to her husband's mental health records and involuntary commitment records and full and complete answers to Interrogatory No. 63. Accordingly, unlike the Majority, I would affirm the trial court's order in this case.

---

**6.** *See also Jones v. Faust,* 852 A.2d 1201, 1206 (Pa.Super.2004) ("As in [*In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980)], the John and Jane Does whose records are sought here have a privacy interest in the disclosure of matters personal to them. However, unlike the situation in that case where the members of the grand jury who were to hear the evidence were sworn to secrecy, no such oath would be required here. Moreover, as noted above, the information sought is for impeachment purposes, an objective which could be accomplished by other, less intrusive, means, e.g., the contrary testimony of another physician, or even by questions as to how many cases the doctor has seen, and of those how many have received diagnoses of minimal injury or none. Our Supreme Court has noted on more than one occasion that 'the right [to privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests.' The interest here, a collateral evidentiary one, is not so weighty as to overbalance the need for confidentiality. Given this result, we decline to address the effect of statutory provisions, the Rules of Civil Procedure, or any other authority on the ordered disclosures.") (citation and footnote omitted).