**CITY OF PITTSBURGH, Appellant**

v.

**Jonathan D. SILVER and The Pittsburgh Post–Gazette.**

Commonwealth Court of Pennsylvania.

Argued April 18, 2012.

Decided Aug. 16, 2012.

Wendy Kobee, Pittsburgh, for appellant.

Holly S. Planinsic, Wheeling, WV, and Fritz Byers, Toledo, OH, for appellees.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.[1]

The City of Pittsburgh (City) appeals the order of the Court of Common Pleas of Allegheny County (trial court) affirming the Final Determination of the Office of Open Records (OOR) and denying the City's motion for a protective order. The OOR's Final Determination ordered the City to comply with the request made by the *Pittsburgh Post–Gazette* and one of its reporters, Jonathan Silver (collectively, Silver) to disclose documents under the Right–to–Know Law (RTKL).[2] We reverse.

---

1. This opinion was reassigned to the majority writer on July 23, 2012.

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

On October 1, 2010, Silver submitted a request under the RTKL seeking copies of all correspondence contained in the file of an assistant city solicitor between attorneys for the estate of Curtis Mitchell and city officials regarding efforts to negotiate a settlement of pending litigation over Mitchell's death.[3] The City denied the request on the basis that the documents were not public records, asserting that they were protected by the attorney work-product doctrine, the attorney-client privilege, and Federal and Pennsylvania Rules of Evidence 408.[4]

▆▆▆ Silver appealed to the OOR[5] which issued a Final Determination on January 21, 2011, sustaining the appeal and directing the City to disclose the documents. The City appealed the Final Determination to the trial court[6] and filed a

---

**3.** At all times relevant to this appeal, no settlement had been reached and the case had not been tried.

**4.** The application of Rule 408, relating to the admissibility of evidence of compromise and offers to compromise, is not at issue in this appeal.

**5.** Section 1310(a)(5) of the RTKL, 65 P.S. § 67.1310(a)(5) provides that "[t]here is established in the Department of Community and Economic Development an Office of Open Records. The office shall ... [a]ssign appeals officers to review appeals of decisions by ... local agencies ... and issue orders and opinions. ..." In relevant part, Section 102, 65 P.S. § 67.102, defines "local agency" as "[a]ny political subdivision. ..."

Moreover, Section 1101(a) and (b), 65 P.S. § 67.1101(a), (b) states, in pertinent part:

((a) **Authorization.—**

(1) If a written request for access to a record is denied ... the requester may file an appeal with the Office of Open Records ... within 15 business days of the mailing date of the agency's response. ...

(2) [I]n the case of an appeal of a decision by a ... local agency, the Office of Open Records shall assign an appeals officer to review the denial.

((b) **Determination.—**

(1) Unless the requester agrees otherwise, the appeals officer shall make a final determination which shall be mailed to the requester and the agency within 30 days of receipt of the appeal. ...

(2) If the appeals officer fails to issue a final determination within 30 days, the appeal is deemed denied.

(3) Prior to issuing a final determination, a hearing may be conducted. The determination by the appeals officer shall be a final order. The appeals officer shall provide a written explanation of the reason for the decision to the requester and the agency. *See also* Section 503(a)(2), 65 P.S. § 67.503(a)(2) ("Except as provided in subsection (d) [ (relating to law enforcement records and statewide officials) ], the Office of Open Records established under section 1310 shall designate an appeals officer under section 1101(a)(2) for all ... local agencies.").

Finally, Section 1102(a), 65 P.S. § 67.1102(a), states, in relevant part:

"(a) **Duties.—**An appeals officer designated under section 503 shall do all of the following:

(1) Set a schedule for the requester and the open-records officer to submit documents in support of their positions.

(2) Review all information filed relating to a request. The appeals officer may hold a hearing. ... The appeals officer may admit into evidence testimony, evidence and documents that the appeals officer believes to be reasonably probative and relevant to an issue in dispute. ...

(3) Consult with agency counsel as appropriate.

(4) Issue a final determination on behalf of the Office of Open Records or other agency.

**6.** Section 1302(a), 65 P.S. § 67.1302(a), states:

(a) **General rule.—**Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a local agency issued under section 1101(b) ... a requester or a local agency may file a petition for review or other document as required by rule of court with the court of common pleas for the county where the local agency is located. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and

motion for a protective order.[7] The trial court held an *in camera* review, revealing ten letters and one fax between the attorney for the Mitchell family and the City's solicitor and associate solicitor. The trial court made findings of fact and conclusions of law, and determined that none of the foregoing correspondence was subject to the asserted privileges. As a result, on August 1, 2011, the trial court issued the instant order affirming the OOR's Final Determination, directing the City to produce the requested records within 30 days, and denying the City's motion for a protective order. The City then filed this appeal.[8]

In this appeal, the City claims that the trial court erred in a number of respects in affirming the OOR's Final Determination and denying its motion for a protective order. However, we are constrained to reverse the trial court's order because the OOR was without jurisdiction under the RTKL to compel the disclosure of the documents in the associate solicitor's file relating to the pending litigation.[9]

Article V, Section 10(c) of the Pennsylvania Constitution states that "[t]he Supreme Court shall have the power to prescribe general rules ... for admission to the bar and to practice law." PA. CONST. art. V, § 10(c). Thus, the Supreme Court is empowered by the Pennsylvania Constitution to exclusively govern the conduct of attorneys practicing law in this Commonwealth. *Beyers v. Richmond*, 594 Pa. 654, 665, 937 A.2d 1082, 1089 (2007); *Commonwealth v. Stern*, 549 Pa. 505, 510, 701 A.2d 568, 570 (1997). The Supreme Court's exclusive authority in this area is founded on the separation of powers between the branches of our Commonwealth's government. *Beyers*, 594 Pa. at 666–67, 937 A.2d at 1090–91.[10] "[I]t is

concisely explain the rationale for the decision.

7. The motion for a protective order sought to prevent disclosure of the requested records based on the claims of personal liability of the City's employees individually named in the case.

8. This Court's review of a trial court's disposition of an appeal involving a request for information from a local agency under the RTKL is limited to determining whether the trial court's findings of fact are supported by competent evidence or whether it committed an error of law or abuse of discretion. *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1029 n. 3 (Pa.Cmwlth.2011). Our scope of review of a question of law under the RTKL is plenary. *Id.* In addition, in reviewing a trial court's discovery order, this Court applies an abuse of discretion standard. *Octave ex rel. Octave v. Walker*, 37 A.3d 604, 607 n. 8 (Pa. Cmwlth.2011). However, to the extent that we are faced with a question of law in this regard, again, our review is plenary. *Id.*

9. "The issue of subject matter jurisdiction may be raised by the parties at any stage of the proceedings or by the court *sua sponte.*

Lack of subject matter jurisdiction of a court or administrative tribunal to act in a matter is an issue that neither can be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation." *Greenberger v. Pennsylvania Insurance Department*, 39 A.3d 625, 629–30 n. 5 (Pa.Cmwlth.2012) (citations omitted).

10. *See Stern*, 549 Pa. at 509–10, 701 A.2d at 570 (" 'A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government.' 'Under the principle of separation of the powers of government, ... no branch should exercise the functions exclusively committed to another branch.' As the ultimate interpreter of the Pennsylvania Constitution, this Court bears the responsibility of determining whether a matter has been exclusively committed to one branch of government.... 'If there is anything in the constitution that is clear beyond controversy, it is that the legislature does not possess judicial powers.' Judicial powers are to be exercised by the judiciary alone and any encroachment upon the judiciary 'must be regarded as a vain attempt by the legislature

■■■■■■■■■■■■■■■■■■■

well settled that the power to regulate and define what constitutes the 'practice of law' is vested in the judiciary, and not in the executive or legislative branches of government." *Gmerek v. State Ethics Commission,* 751 A.2d 1241, 1254 (Pa.Cmwlth. 2000), *aff'd per curiam,* 569 Pa. 579, 807 A.2d 812 (2002) (citation omitted). "Pursuant to [its] constitutional authority, [our Supreme] Court adopted the Rules of Professional Conduct and the Rules of Disciplinary Enforcement, which govern the conduct and discipline of attorneys." *Stern,* 549 Pa. at 510, 701 A.2d at 571. *See* Pa. R.D.E. 103 ("The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules....").

■■ Our Supreme Court's sole jurisdiction over the practice of law includes the conduct of litigation, which necessarily includes lawyers' efforts to settle litigation. *See Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed sub nom. Bucheit v. Laudenberger,* 456 U.S. 940, 102 S.Ct. 2002, 72 L.Ed.2d 462 (1982). Allowing anyone to make ongoing requests under the RTKL concerning all correspondence regarding settlement impermissibly intrudes into the conduct of litigation because it would lessen the frank exchange of information between the parties thereby adversely affecting the ability for litigation to settle.[11] Moreover, the conduct of liti-

gation could be affected because other parties to the litigation could constantly seek information about settlement discussions to discern the other parties' belief as to the strength or weakness of their case. Allowing an administrative agency to order the release of documents would interfere with the courts' sole control over the conduct of litigation.

Moreover, Pa. R.P.C. 1.6(a) states that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation...." As explained:

The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law....

---

to exercise a power which it does not possess.' ") (citations omitted).

11. *See* Pa. R.P.C. Scope, 204 Pa.Code § 81.2(17) ("Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning le-

gal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment....").

Pa. R.P.C. 1.6 cmt. (3), 204 Pa.Code at § 81.4.[12]

■ Because the Supreme Court regulates the release of any information relating to the representation of a client under Pa. R.P.C. 1.6(a), including a proposed settlement agreement, any provision of the RTKL that purports to require such disclosure again unconstitutionally infringes upon the Supreme Court's exercise of its authority under Article V, Section 10(c) of the Pennsylvania Constitution.[13] *See Beyers*, 594 Pa. at 668, 937 A.2d at 1091–93 (holding that the Rules of Professional Conduct and Rules of Disciplinary Enforcement, and not the Unfair Trade Practices and Consumer Protection Law,[14] provided the exclusive remedy for attorney misconduct in collecting and distributing settlement proceeds); *Lloyd v. Fishinger*, 529 Pa. 513, 519–20, 605 A.2d 1193, 1196 (1992) (holding that Section 7101(a)(3) of the Judicial Code, 42 Pa.C.S. § 7101(a)(3), was an unconstitutional attempt by the legislature to enact rules of conduct relating to an attorney's solicitation of clients, an area exclusively regulated by the Supreme Court through the Rules of Professional Conduct).

Because our Supreme Court has sole jurisdiction over the practice of law, the RTKL could not confer upon a hearing officer or the OOR the authority to compel the disclosure of information in an attorney's case file, including settlement negotiations. Accordingly, the trial court's order is reversed and the order of the OOR is vacated.[15]

Judges SIMPSON and BROBSON dissent.

### ORDER

AND NOW, this 16th day of August, 2012, the order of the Court of Common Pleas of Allegheny County, dated August 1, 2011, at No. GD 11–003642, is reversed and the order of the Office of Open Records is vacated.

---

**12.** *See also* Pa. R.P.C. 1.6 cmt. (18), 204 Pa. Code at § 81.4 ("Other law may require that a lawyer disclose information about a client. Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules. When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4"); Pa. R.P.C. 1.6 cmt. (19), 204 Pa.Code at § 81.4 ("A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all non-frivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.").

**13.** That is not to say that the details of an executed settlement agreement are not subject to disclosure under the RTKL where the agreement fixes the personal or property rights of the parties or requires a payment involving the disbursement of public funds. *Tribune–Review Publishing Company v. Westmoreland County Housing Authority*, 574 Pa. 661, 833 A.2d 112 (2003); *Newspaper Holdings, Inc. v. New Castle Area School District*, 911 A.2d 644 (Pa.Cmwlth.2006), *appeal denied*, 592 Pa. 776, 926 A.2d 443 (2007).

**14.** Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201–1–210–6.

**15.** We will not consider whether the items at issue are exempt from disclosure under Section 305(a)(3)of the RTKL, 65 P.S. § 67.305(a)(3), or are not deemed to be a public record under Section 306, 65 P.S. § 67.306, under "State law or regulation or judicial order or decree" because this claim was not raised by the City below.

**CONCURRING AND DISSENTING OPINION BY Judge COVEY.**

I respectfully dissent from the majority's conclusion that the Office of Open Records (OOR) does not have jurisdiction under the Right–to–Know Law (RTKL)[1] to address the disclosure of documents in an attorney's case file. However, I concur with the majority that the settlement negotiations are not subject to disclosure.

On October 1, 2010, Jonathan D. Silver and the Pittsburgh Post–Gazette (collectively the Gazette) submitted a request under the RTKL to the City of Pittsburgh (City) requesting access to and copies of all correspondence beginning March 19, 2010 through the present day between attorneys for the estate of Curtis Mitchell on one side and city officials on the other, concerning settlement negotiations regarding the death of Curtis Mitchell. The City denied the request on the basis that the records requested were not public records because they were protected by the attorney work-product and the attorney-client privileges.

The Gazette appealed to the OOR, which issued a Final Determination overruling the City's denial and granting the Gazette's appeal. The City appealed to the trial court. The trial court held an *in camera* review which revealed ten letters and one fax between the City's solicitors and counsel for the Mitchell family. The trial court determined none of the documents were protected by the attorney work-product or the attorney-client privilege. Accordingly, on August 1, 2011, the trial court denied the City's Motion for a Protective Order and affirmed the OOR's Final Determination to the extent that the City was directed to comply within 30 days to the Gazette's request. The City appealed to this Court.

Initially, we recognize that "[w]here . . . a settlement agreement fixes the personal or property rights of the parties or calls for the payment of money involving the disbursement of public funds, it is subject to disclosure under the RTKL." *Newspaper Holdings, Inc. v. New Castle Area Sch. Dist.*, 911 A.2d 644, 648 (Pa.Cmwlth.2006). We further acknowledge that a party

> may not contract away the public's right of access to public records because the purpose of access is to keep open the doors of government, to prohibit secrets, to scrutinize the actions of public officials and to make public officials accountable in their use of public funds. A confidentiality clause contained in a settlement agreement that runs afoul of the RTKL violates public policy and is unenforceable.

*Id.*, 911 A.2d at 649 n. 11 (citation omitted). However, the case law is silent regarding settlement negotiations.

The City argues that Rule 1.6 of the Rules of Professional Conduct protects client confidentiality. Notwithstanding the fact that the negotiations were shared with and directed to Mitchell family counsel, these communications were for the sole purpose of effectively representing its client, and amicably resolving their dispute. In no way did this disclosure constitute authorization by either party that the negotiations be revealed to anybody else. Further, the RTKL does not surpass the attorney-client privilege, especially where disclosure would impair the City's ability to defend or amicably resolve the underlying matter.

Rule 1.6(a) of the Rules of Professional Conduct, provides in pertinent part: "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent. . . ." Here,

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

the information refers to settlement negotiations authorized by the client. While it is difficult to discern how correspondence between opposing counsel can be categorized as subject to the attorney-client privilege, "**public policy wisely encourages settlements**" and supports non-disclosure of the settlement negotiations. *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) (emphasis added). The Pennsylvania Supreme Court has explained the importance of settlements as follows:

> Numerous commentators have addressed the problem of overcrowded courts and the importance of settlements to the efficient flow of justice. A fundament of those articles is that settlement of civil litigation is critical to the courts' management of caseloads. Without settlement of cases, litigants would have to wait years, if not decades, for their day in court. **Nearly 90% of all matters in controversy end in settlement. Were we, as a court, to encourage litigation that would undermine the current rate of settlements, we would do a grave injustice and disservice to the citizens of the Commonwealth. 'The settlement of cases before trial is one of the greatest potentials for assisting the courts to reduce their caseloads.' As courts are fond of repeating, '[j]ustice delayed is justice denied.'** The Pennsylvania Constitution also expressly recognizes that access to the courts without delay is a right to be enjoyed by all citizens. 'All courts shall be open; and every man for an injury done him ... shall have remedy by due course of law, and right and **justice administered *without* ... *delay.*'** Article I, § 11 (emphasis supplied).

*Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick,* 526 Pa. 541, 550, 587 A.2d 1346, 1350 (1991) (footnotes

and citation omitted) (emphasis added). The Court continued:

> In addition to promoting settlements for purposes of judicial economy, there are other, more significant reasons that we encourage them. Professor Menkel–Meadow provides a compelling and eloquent statement of the purposes of settlements in her article, *For and Against Settlement: Uses and Abuses of the Mandatory Settlement Conference:*
>
> > **What settlement offers is a substantive justice that may be more responsive to the parties' needs than adjudication. Settlement can be particularized to the needs of the parties, it can avoid win/lose, binary results, provide richer remedies than the commodification or monetarization of all claims, and achieve legitimacy through consent. In addition, settlement offers a different substantive process by allowing participation by the parties as well as the lawyers.**
>
> Additionally, settlements reduce the stress and concrescent negativity associated with protracted litigation. As Abraham Lincoln remarked, '[p]ersuade your neighbors to compromise whenever you can. Point out to them how the nominal winner is often a real loser—in fees, expenses, and waste of time.' Those entering into litigation do not do so with an attitude of insouciance; rather, they often engage their adversary with bellicosity, determined to be the victor at any price—even if that victory is a Pyrrhic one. There is frequently more than one losing party at the end of any litigation. Protracted litigation is also counterproductive to businesses and to workers. In spending so much time and energy on the lawsuit, litigants neglect the positive and productive aspects of their lives. **Those who are involved**

in lawsuits often do so to the detriment of their lives, their businesses and their families. It is more important for our society to encourage citizens and businesses to retreat from litigation and return to their lives. It little profits society and its citizens to be overly engaged in the business of litigation. Rather, everyone benefits from litigants resolving their disagreements, settling their disputes and returning to the business of being productive members of society.

*Id.*, 526 Pa. at 551–52, 587 A.2d at 1350–51 (footnote and citation omitted) (emphasis added). To require the disclosure of the documents in the assistant city solicitor's file relating to the settlement negotiations would directly undermine the above-stated public policy.

While there is no dispute that a settlement agreement is a public record requiring disclosure under the RTKL, the long-standing public policy of encouraging settlements requires protecting settlement negotiations from the same disclosure requirement. Accordingly, I dissent in part, and concur in part.