IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Appeal of Daniel Auerbach | : **CASES CONSOLIDATED** |
| | : |
| Appeal of: Daniel J. Auerbach | : No. 729 C.D. 2023 |
| | |
| In re: Appeal of Daniel Auerbach | : |
| | : No. 989 C.D. 2023 |
| Appeal of: City of Philadelphia | : Argued: March 5, 2025 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  May 6, 2025


As aptly described by the Philadelphia County Court of Common Pleas (trial court), these consolidated cross-appeals "represent the latest in the cat and mouse game over Daniel J. Auerbach's request for records related to the City of Philadelphia's [(City)] Covid-19 response."  Trial Court's Op., 1/22/24, at 1.  More particularly, the City appeals from the trial court's June 16, 2023 and June 28, 2023 Orders which concluded that Article V, §5-1104 of the City's Home Rule Charter (Charter) conferred an enforceable individual right to access City Records.  Before this Court, the City argues that this right is merely a generalized public right

effectuated by the City Archives such that Auerbach possesses no individual right under the Charter to inspect the requested emails.

Conversely, Auerbach appeals from the trial court's June 28, 2023 Order, which incorporated the Right-to-Know Law's (RTKL)[1] deliberative process privilege exception as applied to his request to inspect records under the Charter. On appeal, Auerbach argues that the RTKL's exceptions are exclusive thereto and that the trial court erred by permitting the City to redact documents for his inspection pursuant to his request. Upon careful review, we reverse.

## I. Background

### A. *March 2022 request under Article V, §5-1104 of the Charter*

Although this is the first of Auerbach's requests which have obtained our Court's review, this is not the first time Auerbach has requested emails relating to the City's Covid-19 response under the Charter. In fact, Auerbach made a similar request in March 2022, seeking the production of all emails relating to the City's Covid-19 response from the City's Health Commissioner, Dr. Cheryl Bettigole. According to the trial court, the City denied his request in a letter, reasoning that the RTKL's "standard for disclosure must be applied . . . ." Trial Court's Op., 5/3/2022, at 1. Instead of responding, Auerbach filed a mandamus action in the trial court seeking production of the emails. Auerbach also filed a motion for peremptory judgment under Pennsylvania Rule of Civil Procedure 1098,[2] prompting the City to

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] "At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear. Judgment shall not be entered without prior notice to all parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible." Pa.R.Civ.P. 1098.

file preliminary objections. While the trial court did not agree with the City's preliminary objections, it concluded that the matter was premature, ultimately denying Auerbach's motion for peremptory judgment; overruling the City's preliminary objections; and dismissing the matter without prejudice. Trial Court's Op., 5/3/22, at 10.

Relevant here, the trial court summarily explained that the City's Charter conferred a public right to inspection on its residents such that any member of the public could inspect City Records. Trial Court's Op., 5/3/22, at 5. Because Article V, §5-1100 of the Charter provides that a City Record "shall include all books, papers, maps, photographs, reproductions, or other documentary materials regardless of physical form or characteristics owned by the City[,]" the trial court reasoned that Commissioner Bettigole's emails were necessarily City Records.[3]

---

[3] Article V, §5-1100 of the Charter provides in full:

> Within the scope of its functions under this charter, the Department of Records shall exercise the powers and perform the duties pertaining to the creation, maintenance for public use, retention and disposition of City records, formerly exercised and performed by all officers, departments, boards or commissions or other governmental agencies of the City and such other duties as are conferred or imposed upon it by this charter or by ordinance. "City records" shall include all books, papers, maps, photographs, reproductions, or other documentary materials regardless of physical form or characteristics owned by the City and made or received by any officer, department, board or commission or other governmental agency of the City in pursuance of any statute or ordinance or in connection with the transaction of public business and preserved or appropriate for preservation as evidence of the organization, functions, policies, duties, procedures, operations, or other activities of the City or because of the informational value of data contained therein. "City records" shall not include library and museum material made or acquired and preserved solely for reference or exhibition purposes.

3

Trial Court's Op., 5/3/22, at 6. To the extent that the City argued that the RTKL preempted the Charter's public right to inspection, the trial court opined that "the Charter and the RTKL stand side-by-side in Philadelphia as equal avenues to public inspection." *Id*. at 7. The trial court similarly found the City's argument that Auerbach failed to exhaust his statutory remedies under the RTKL unpersuasive. Again, the trial court expressed that "this situation is different. The [] Charter specifically authorizes public inspection. Simply because the RTKL, in Philadelphia, is a separate path to the same or similar information, does not render the [] Charter a nullity." *Id*. Finally, the trial court observed that any disclosure under the Charter was subject to limitations concerning the time, place, and manner of the disclosures. Because Auerbach requested all of Commissioner Bettigole's emails, the trial court considered the request to be overbroad and made in an unreasonable manner. *Id*. at 9-10.

### B. RTKL Request and July 22, 2022 Charter Inspection Request

While this litigation was ongoing, Auerbach made a similar request to the City under the RTKL. According to the City, it produced nearly 5,000 pages of redacted emails in response thereto on July 22, 2022. *See* Designated Appellant's Brief (City's Brief) at 7.

On the same day, Auerbach sent an email to the City's Law Department requesting to inspect City Records "solely under §5-1104 of the City's [] Charter." *See* Reproduced Record (R.R.) at 33a. More specifically, Auerbach requested a number of emails from the RTKL document production in unredacted form. To be exact, Auerbach requested:

> I request that the City permit me to inspect certain emails
> from [the RTKL] document production in unredacted

4

form. I have attached PDFs of the relevant documents as produced to me to the email by which I transmitted this letter. I maintained the file name of the documents as the City's vendor provided them to me. Please let me know if it is unclear what I am requesting.

*Id.*

The City's Law Department denied the request in a letter dated August 10, 2022. In primary part, the Law Department reiterated that the emails were redacted pursuant to its claimed exemptions under the RTKL and reminded Auerbach that he had the right to appeal the redactions to the Office of Open Records. However, the Law Department added that "unless and until that statutory remedy [was] exhausted, [Auerbach was] not entitled to demand inspection" under the Charter. R.R. at 1a. The Law Department also cautioned that the redacted material was exempt under the Charter's own exceptions, the deliberative process privilege, and "other potential legally recognized duties of confidence and privilege." *Id.* The Law Department largely reiterated its response in a subsequent email to Auerbach on August 17, 2022. *See* R.R. at 3a.

In response, Auerbach filed a local agency appeal in the trial court under Section 752 of the Judicial Code, 2 Pa. C.S. §752.[4] More specifically, Auerbach filed a Notice of Appeal from the "decision of the City['s] Law Department, dated August 17, 2022 . . . ." *See* Original Record (O.R.) at Item No. 1.

On June 16, 2023, the trial court reaffirmed "its previous conclusion that the Charter provides for a public right to inspection," covering the emails at

---

[4] The Local Agency Law, 2 Pa. C.S. §§551-555, 751-754. Section 752 of the Local Agency Law provides: "Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to title 42 (relating to judiciary and judicial procedure)." 2 Pa. C.S. §752.

issue; finding that the deliberative process privilege under the RTKL applies to the Charter's right to public inspection; and ordered the City to produce unredacted emails for *in camera* review. Trial Court's Order, 6/16/23, ¶¶1-4. After conducting its *in camera* review, the trial court found that some of the City's redactions were not covered by the deliberative process privilege and ordered their production. Trial Court's Order, 6/28/23, ¶¶1, 3. However, the trial court found that the City properly applied its privilege in most circumstances. *Id*. ¶2.

Both parties filed timely cross-appeals. In an opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court explained that, concerning the City's appeal, it was incorporating its reasoning from its May 3, 2022 opinion. Regarding Auerbach's appeal, the trial court explained that "the deliberative process privilege is recognized by both statutory and decisional law." Trial Court's Op., 1/22/24, at 7. Although "the Charter does not specifically reference the deliberative process privilege . . . [Section 5-1104 of the Charter] clearly provides that the public's right to inspection is not absolute and must be qualified by legally recognized privileges, one of which is the deliberative process privilege." *Id*.

## II. Issues

Before this Court,[5] the City asserts that the Law Department's August 17, 2022 email denying Auerbach's request to inspect emails pursuant to Article V, §5-1104 of the Charter does not constitute an appealable adjudication under Section

---

[5] Our review of a local agency appeal, where "a full and complete record of the proceedings before the local agency was made," is limited to whether constitutional rights have been violated, whether an error of law has occurred, and whether substantial evidence supports the agency's findings of fact. 2 Pa. C.S. §754.

752 of the Local Agency Law, 2 Pa. C.S. §752. City's Brief at 6. For his part, Auerbach raises the following issue: whether the trial court erred in incorporating the RTKL's deliberative process privilege to his request under the Charter's right to public inspection. Designated Appellee's Brief (Auerbach's Brief) at 3. We believe both parties have failed to discern the dispositive issue in this case, namely, in whom does the Charter invest the duty of guaranteeing the public's right to inspection?

### III. Discussion

The City primarily argues that the Law Department's letter was not an appealable adjudication under the Local Agency Law because the Charter does not grant "any *individual* person an enforceable right to access *specific* documents." City's Brief at 15. Rather, the City argues that it effectuates the public right of inspection under the Charter by operating its "rich" City Archives. "Read in the context of all of Article V, Chapter 11's provisions, Section 5-1104 establishes the public *nature* of City Records and confers a generalized right or privilege to the public at large to inspect records for the purpose of learning how the government conducts its business . . . ." *Id*. at 18 (citing Article V of the Charter, §5-1101(d)) (emphasis in original). The City does not believe that the framers of Article V of the Charter intended to create an "administrative scheme" like the RTKL or its predecessor the Right-to-Know Act,[6] nor that the framers intended to confer an enforceable right on individual citizens. In support thereof, the City likens the instant matter to our Court's decision in *In re Malehorn*, 106 A.3d 816 (Pa. Cmwlth. 2014) (concluding that a responsive email to a request made under Section 1626(c)

---

[6] Act of June 21, 1957, P.L. 390, *as amended*, *formerly* 65 P.S. §§66.1-66.4, repealed by the RTKL.

7

of the Pennsylvania Election Code[7] did not constitute an adjudication for purposes of Section 702 of the Administrative Agency Law, 2 Pa. C.S. §702). Finally, as a practical matter, the City argues that affirming the trial court's decision would double the requests for the same documents under both the Charter and the RTKL and potentially produce different, asynchronous outcomes.

Auerbach responds by characterizing the City's argument as treating a public right as "no right at all." Auerbach's Brief at 14. More particularly, Auerbach asserts that the Charter's public right to inspection is enforceable by an individual, and the City's denial of his request constitutes an adjudication under the Local Agency Law because an adjudication includes any determination affecting a privilege of the parties involved. *Id.* (citing Section 101 of the Judicial Code, 2 Pa. C.S. §101). Auerbach believes that this Court's prior decisions, such as *Nguyen Vu v. Pennsylvania Board of Probation and Parole*, 200 A.3d 627, 632 (Pa. Cmwlth. 2018), clarify that "the right to access public records is a privilege." Auerbach's Brief at 16. As for the City's practical arguments, Auerbach is unsympathetic. Rather, he argues, "[a]ny burden on the courts under the public right to inspection would be solely the responsibility – and fault – of the City." *Id.* at 26. Auerbach even goes so far as to allege that "[t]he City's unspoken problem with the public right to inspection is that if offers fewer statutory exemptions than the [RTKL]." *Id.* at n.6.

Preliminarily, the City's electors adopted the current Charter on April 17, 1951, and the Charter became effective on January 7, 1952. *See City of*

---

[7] Act of June 3, 1937, P.L. 1333, *as amended*, added by Act of October 4, 1978, P.L. 893, 25 P.S. §3246(c).

*Philadelphia v. Schweiker*, 858 A.2d 75, 81 n.9. (Pa. 2004).[8]  Relevant here, the Charter created a Department of Records to remedy a number of problems caused by the disorderly and inefficient management of City Records.  For example, there were no uniform standards for the creation, maintenance, or disposal of City Records across the City's various departments and important historical records were either scattered throughout the City and deteriorating under a department's particular storage standards or bound to deteriorate under the same.  The framers of the Charter explained that without uniform standards "certain economics" could not be obtained and stated: "To overcome these undesirable conditions, a Department of Records is created, and this section vests all record functions in that Department."  Annotation to §5-1100.

To affect these goals, the Charter invests certain powers and duties in the Department of Records.  *See* Article V of the Charter, §5-1101.  Among these, the Charter empowers the Department of Records to "make rules embodying standards for all departments, boards, commissions" or other City agencies, *id*. §5-1101(a); to establish and maintain the City Archives, *id*. §5-1101(c); and, importantly, to make City Records available for public inspection.  *Id*. §5-1101(b).  Attendant to these powers, the Department of Records may "examine the records of any office department, board or commission to determine the manner in which they are maintained[,]"  *id*. §5-1102, and to "make rules binding on all officers, departments, boards or commissions and necessary to carry out the powers and duties vested in it by [the C]harter."  *Id*. §5-1103.

Regarding the public inspection and use of City Records, the Charter provides:

---

[8]The Charter is digitized and can be found at: https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-262986 (last visited 5/5/25).

The Department shall collect, maintain and make available for public inspection the original or duplicates of all City Records maintained for that purpose. Where such records are necessary for the current exercise of the powers and the current performance of the duties of any office, department, board or commission or other agency, the original or a duplicate thereof may also be retained by such department, board or commission. The Department shall furnish to persons applying therefor certificates relating to City Records or copies of City Records upon the payment of such charges as shall fairly reimburse the City for the cost of such service and for this purpose it shall prepare and from time to time revise a schedule of fees.

Article V of the Charter, §5-1101(b). On this point, the framers explained that the public has many "personal and business reasons" for obtaining City Records, but were previously discouraged from doing so by the former state of the City's record collections. Annotation No. 2 to §5-1101. "To remedy this condition, the Department of Records [was] made the agency where all records either in the original form or duplicate form are to be kept and are to be available for public inspection .... The Department of Records will be the one agency where copies of records may be obtained by the public ...." *Id*.

The framers of the Charter saw fit to qualify the public right to inspection, however. The provision at issue now, Article V of the Charter, §5-1104, provides:

City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been prepared for or by the Law Department for use in actions or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection but the officer, department, board or commission or other

10

governmental agency of the City having the care and custody of such records may make reasonable regulations governing the time, place and manner of their inspection and for the purposes of archival preservation, copies of City records may be substituted in lieu of original records.[9]

Article V of the Charter, §5-1104. (emphasis added). The framers of this provision explained its purpose as follows:

Records of the City relate to the government of the City and for that reason those governed should have a right to inspect them. However, this right has to be qualified by reasonableness as to the time, place and manner of inspection, by assuring adequate for the records being examined, and by considerations for protecting the individual right to privacy, law enforcement, public safety, legally recognized duties of confidence, legally recognized privileges and the interest of the City in any lawsuit in which it may be involved.

*Id.*, Annotation to §5-1104 (emphasis added).

We believe these provisions illustrate why Auerbach has, for lack of a better phrase, jumped the gun on filing a local agency appeal in the trial court. Here, as indicated, Auerbach sought the unredacted versions of certain emails from the July 22, 2022 RTKL document production under the Charter's public right to

---

[9] The exact interplay between the Department of Records' duties under the Charter and its relationship with other City departments and agencies is not at issue here nor here decided. However, we would not interpret the clause regarding a custodian's ability to govern the time, place, and manner of the records' inspection to conflict with the Department of Records' exclusive authority to make the records available to the public as discussed *supra*. Rather, reading this provision *in pari materia* with the other provisions concerning the Department of Records' duties, *e.g.*, to examine records or to bind other agencies by the Department of Records' rules, we believe the clause is simply meant to qualify the Department of Records' otherwise exclusive authority over the City Records. In other words, while the Department of Records would facilitate the request for inspection, the custodian of the record would nevertheless be permitted to "make reasonable regulations governing the time, place and manner of their inspection." Article V of the Charter, §5-1104.

inspection from the City's *Law* Department. R.R. at 33a. Auerbach then proceeded to file a local agency appeal in the trial court under the rationale that the Law Department's August 17, 2022 email denying his request constituted an adjudication. O.R. at Item No. 1. Then, as litigation over this matter progressed, the parties focused pervasively on *what* the Charter's public right to inspection entails, such that they overlooked the more relevant inquiry, *i.e.*, *in which department* does the Charter entrust the task of discharging the public's right to inspect City Records?

The Charter, however, answers this question unequivocally and exclusively: the Department of Records. *See* Article V of the Charter, §5-1101(b) ("The Department of Records shall have the power and its duty shall be . . . [to] make available for public inspection the originals or duplicates of all City Records maintained for that purpose."); *id.*, Annotation No. 2 to §5-1101 ("[T]he Department of Records is made the agency where all records . . . are to be kept to be available for public inspection. . . . **The Department of Records will be the one agency** of the City **where copies of records may be obtained by the public** . . . .") (emphasis added). Thus, in no uncertain terms, a member of the public wishing to avail themselves of the public right to inspect City Records under the Charter must do so by seeking the record from the Department of Records, not the Law Department.

This distinction is critical because it is ultimately jurisdictional. In the administrative agency context, we have held that "the power and authority to be exercised by administrative agencies must be conferred by the Legislature. The powers and authority must be either expressly conferred or given by necessary implication." *Department of Environmental Resources v. Butler County Mushroom Farm*, 454 A.2d 1, 4 (Pa. 1982). We find this principle persuasive with respect to this local agency appeal, and observe that the Charter only vests the Law Department

12

with the power to furnish legal advice to City personnel, including the Department of Records; to conduct litigation; to prepare and approve contracts; to conduct investigations; to draft or codify ordinances; and grants the City Solicitor *access* to the records of the other departments.  Article IV of the Charter, §§4-400-4-401; 8-410.  However, as indicated, the Charter treats the Department of Records' ability to grant access to City Records under the Charter's right to public inspection as exclusive thereto.  Therefore, even if we were to agree, *arguendo*, that the August 17, 2022 email constituted an adjudication, as an exclusive subject of the Department of Records' functions, we would be constrained to conclude that the Law Department was powerless to adjudicate the matter – thereby depriving the Law Department of jurisdiction.  *See City of Pittsburgh v. Silver*, 50 A.3d 296, 299 (Pa. Cmwlth. 2012).

To be sure, this provision of the City's Charter has been rarely invoked and, as such, the relevant case law on the matter is sparse.[10]  So too, the parties were likely distracted by their familiarity with analogous provisions of the RTKL.  Indeed, while it is obvious that the Charter confers the right to inspect City Records upon the public, the precise contours of what exactly this right entails and the proper procedure for availing oneself of this right are much less obvious.  Upon review, however, we do not believe that the Charter empowered the Law Department to determine the availability of City Records for Auerbach's inspection.  Thus, the

---

[10] While neither the trial court nor the parties cite or analyze the cases mentioned below, we note that this Court has previously discussed the enforceability of the Charter's public right to inspection on a few occasions.  *See Moak v. Philadelphia Newspapers, Inc.*, 336 A.2d 920, 921-22 (Pa. Cmwlth. 1975), *abrogated on other grounds by Pennsylvania State University v. State Employees' Retirement Board*, 935 A.2d 530, 541 (Pa. 2007); and *City of Philadelphia v. Doe*, 405 A.2d 1317, 1318-20 (Pa. Cmwlth. 1979).  Although *Moak* and *Doe* do little to clarify the process required to obtain City Records under the Charter's public right to inspection, we disapprove of both cases to the extent either case differs from our decision herein.

subject of Auerbach's appeal – the *Law* Department's August 17, 2022 email – cannot serve as the basis for a local agency appeal and the trial court erred as a matter of law by finding otherwise.

## IV. Conclusion

Accordingly, the trial court's orders are reversed.[11]

_____

MICHAEL H. WOJCIK, Judge

---

[11] As the RTKL's provisions are not at issue herein, the foregoing opinion should in no way be interpreted to provide guidance on any RTKL requests made to the City or its various departments and agencies.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Daniel Auerbach   : **CASES CONSOLIDATED**
:
Appeal of: Daniel J. Auerbach   : No. 729 C.D. 2023


In re: Appeal of Daniel Auerbach   :
: No. 989 C.D. 2023
Appeal of: City of Philadelphia   :


# **O R D E R**


AND NOW, this 6th day of May, 2025, the orders of the Philadelphia County Court of Common Pleas dated June 16, 2023, and June 28, 2023, are **REVERSED**.


_____
MICHAEL H. WOJCIK, Judge